### 75201. BYRD v. THE STATE.
(367 SE2d 300)

BEASLEY, Judge.

Appellant was convicted of theft by taking. OCGA § 16-8-2.

1. The first question is whether the court erred by denying the motion for a directed verdict of acquittal because the evidence does not establish the offense.

Stated briefly, the evidence showed that Graddy contracted with appellant to build a laundry room in Graddy's basement and paid $800 of the contract price at the time the contract was signed. When appellant did not commence the work pursuant to the contract, Graddy terminated the contract and appellant agreed to refund the

initial amount paid less $25 for materials purchased. Appellant did not repay the money.

Byrd argues that the fact he did not commence the work within two days is not a sufficient basis on which to base a criminal conviction. However, appellant's conviction was based instead on the theory that he was given $800 under an agreement to make a specified application of the funds, and knowingly converted them to his own use in violation of the agreement. This would constitute theft by conversion. OCGA § 16-8-4.

Appellant's argument that the indictment charged the wrong offense, that is, theft by taking instead of theft by deception, fails. The phrase "regardless of the manner in which the property is taken or appropriated," found in the theft-by-taking statute, "renders the section sufficiently broad to encompass thefts or larcenies perpetrated by deception . . . and theft by conversion . . ." *Jones v. State,* 137 Ga. App. 612, 613 (4) (224 SE2d 473) (1976); *Ray v. State,* 165 Ga. App. 89, 91 (1) (299 SE2d 584) (1983). See also the recent case of *Gordon v. State,* 181 Ga. App. 391, 392 (1) (352 SE2d 582) (1986), aff'd in part and rev'd in part, *Gordon v. State,* 257 Ga. 335 (359 SE2d 634) (1987).

The evidence would be sufficient to meet the standard of proof required by *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560), except for a fatal problem discussed in Division 2.

2. Appellant alleges error in allowing evidence concerning a mediation proceeding undertaken at the instance of the state court, criminal division, at which appellant signed an agreement to repay Graddy $800, plus interest.

We first point out that the evidence complained about related to mediation and not arbitration, although the parties sometimes erroneously referred to the process they were speaking of as "arbitration." There are vast differences between the two, but they need not be described at length here. For an arbitration procedure, see OCGA Title 9, Chapter 9.[1] Mediation is not statutorily provided for. A fundamental difference is that in mediation, the parties to the dispute work towards achieving an agreement through facilitation by a mediator, whereas in arbitration, the third party as arbitrator can render a decision to resolve the dispute. See, e.g., Rice, "Mediation & Arbitration as a Civil Alternative to the Criminal Justice System — An Overview and Legal Analysis," 29 *American Univ. Law Review* 17, 21 (1979).

As established by the record in this case, the parties were directed to the Neighborhood Justice Center of Atlanta, Inc., by the

---

[1] See also Barrett, "Arbitration as a Strategic Alternative," 33 *The Atlanta Lawyer* 15 (Winter 1988).

state court before which the criminal charge was first pending. The purpose was to facilitate a civil settlement for the dispute by way of the mediation process provided by that agency. The criminal charge, brought by warrant, remained pending, to await the outcome of the settlement efforts. If they were successful, the state court would entertain dismissal of the criminal charges. If not, the latter would proceed. After about eight months elapsed without appellant's compliance with the mediated agreement, he was indicted and bound over to superior court for trial.

By allowing this alternative dispute resolution effort to be evidenced in the subsequent criminal trial, the trial court's ruling eliminates its usefulness. For no criminal defendant will agree to "work things out" and compromise his position if he knows that any inference of responsibility arising from what he says and does in the mediation process will be admissible as an admission of guilt in the criminal proceeding which will eventualize if mediation fails.

As succinctly stated by Rice with respect to confidentiality, supra at 75 and 80, "The policy is to encourage settlements, but admission of statements made during negotiations tends to defeat that objective . . . Unless [the programs] can assure confidentiality, the programs will be unable to create the atmosphere of openness that is necessary for successful dispute resolution." Directly to the point, and backed up through demonstration, is Friedman's statement in the article "Protection of Confidentiality in the Mediation of Minor Disputes," 11 *Capital Univ. Law Review* 182, 191: "The integrity of mediation programs is in jeopardy, however, without confidentiality for the proceedings." See Fed. Rules Evid. 408, 28 USCA; "Protecting Confidentiality in Mediation," 98 Harv. L. Rev. 441 (1984).

The Federal Rule of Criminal Procedure 11 (e) (6), 18 USCA, protects statements and conduct made in negotiations and plea bargains in criminal cases except in very limited circumstances, as does the 1987 Texas Alternative Dispute Resolution Procedures Act, Sec. 154.073.

The policy reasons for excluding offers of compromise from later court proceedings are synthesized by Friedman, supra at 205, and are particularly applicable here: "(1) offers of compromise are privileged because public policy encourages the settlement of disputes without trial; (2) such offers are irrelevant because they are not intended as admissions; and (3) the negotiation process establishes express or implied agreements that admissions made during negotiations will be excluded and courts will enforce those agreements." The concept of pretrial diversion programs is part of the public policy of the state. See OCGA § 42-8-80.

In the instant case, as is standard in these referrals, defendant's mediation-related statements and actions were not made with any

warning of rights against self-incrimination, and yet they were prompted by court action itself creating a close procedural tie. A serious Fifth and Fourteenth Amendments *Miranda* problem is created by the admission of the objected-to evidence. Cf. *United States v. Gullo*, 672 FSupp. 99, 103 (W.D.N.Y. 1987). This differs from the situation in *Williams v. State*, 178 Ga. App. 216 (1) (342 SE2d 703) (1986), in which a privately-negotiated agreement, not instigated at court direction during criminal proceedings, was ruled admissible.

Just as a withdrawn plea of guilty "shall not be admissible as evidence against [defendant] at his trial," OCGA § 17-7-93 (b), so too must be the words and actions which defendant undertakes in an effort to comply with the court's direction that mediation be pursued to resolve the pending criminal matter.

A new trial is required because we cannot conclude that the inadmissible evidence did not contribute to reaching the verdict. The nature of the evidence and its relation to the charge and the defense render it not harmless. This is so because incriminatory statements tend to establish guilt, *Hunter v. State*, 180 Ga. App. 501 (349 SE2d 773) (1986), and this is not a case where "proof of the same facts by legally admissible evidence renders harmless the admission of inadmissible evidence. [Cit.]" *Riggins v. State*, 179 Ga. App. 179, 180 (2) (345 SE2d 897) (1986). Nor can we say that it is "highly probable" that the erroneous admission of this evidence did not contribute to the verdict. Cf. *Little v. State*, 165 Ga. App. 389, 392 (3) (300 SE2d 540) (1983).

3. Enumerations 3 through 6 relate to incidents which are unlikely to recur at retrial and thus need not be ruled on. *Piercy v. State*, 92 Ga. App. 599, 601 (2) (89 SE2d 554) (1955).

4. Appellant's next six enumerations of error relate to allegedly erroneous charges by the court. Since they may be repeated in the new trial, we consider them. OCGA § 5-6-34 (c).

a. Appellant attacks the court's charge on the meaning and effect of a plea of not guilty. The court charged that such a plea is not evidence, and that by entering such a plea, defendant placed the burden of proof on the State. The court also charged that defendant entered the case with a presumption of innocence, "giving him a slight weight in his favor." The quoted portion of the charge is claimed to be error.

If the court had stopped at that point, its charge might be construed as error. However, it explained that the charge meant that if the jury voted at the beginning of trial there would be only one verdict — not guilty — because there is a presumption of innocence in appellant's favor, and as the evidence is presented, it becomes a question for the jury to determine whether the evidence is sufficient to overcome the presumption. Shortly thereafter, the court also charged the jury again on the presumption of innocence, stating that the pre-

sumption remains with appellant throughout the trial until and unless the State produces evidence sufficient to satisfy the jurors' minds beyond a reasonable doubt of appellant's guilt. This was a correct statement of the law. *Reeves v. State*, 241 Ga. 44, 48 (4) (243 SE2d 24) (1978).

Thus, even if the few words objected to might be erroneous, the charge as a whole must be considered harmless and nonprejudicial. *City Dodge v. Gardner*, 130 Ga. App. 502, 505 (2) (203 SE2d 729) (1973). See also *Spencer v. State*, 231 Ga. 705, 707 (203 SE2d 856) (1974).

b. Next at appellant's request we review the court's charge on conflicting testimony of witnesses and impeachment of witnesses. They were given substantially in the language found in Volume 2, Suggested Pattern Jury Instructions, Criminal Cases, at pages 12, 37, and 38.

Contrary to appellant's assertion, the court did not instruct on perjury by witnesses. Rather, in its charge on conflicting testimony, the court stated it was the jury's duty to reconcile conflicting evidence "so as to make all the witnesses speak the truth and perjury be imputed to none of them." The pattern instructions provide that it is the duty of the jury to resolve conflicts "without believing that any witness made a false statement." Id. at 12. Since a witness under oath who knowingly and wilfully makes a false statement in a judicial proceeding commits the offense of perjury, OCGA § 16-10-70 (a), the phrases "so perjury be imputed to none of them" and "without believing that any witness made a false statement" have the same meaning. Thus, there was no error as respects conflicting testimony.

Appellant's argument that it was error to charge on impeachment of witnesses, because no witness was impeached, is without merit. The court stated that *if* any effort had been made to impeach a witness it was for the jury to determine if the effort had been successful. Thus, the charge was qualified to apply only if an effort had been made to impeach a witness.

Further, assuming impeachment was not in issue, an erroneous charge touching on a matter not in issue under the evidence, unless prejudicial or harmful as revealed by the entire record, does not require or demand reversal. *Davis v. State*, 167 Ga. App. 701, 702 (1) (307 SE2d 272) (1983). We find nothing prejudicial or harmful in this charge when taken in context with the charge as a whole on the subjects of conflicting testimony and credibility of witnesses.

c. We find no error in the court's charge on reasonable doubt. Appellant again has taken one statement out of the entire charge on reasonable doubt, and the charge as a whole was correct. *Spencer*, supra.

d. Appellant alleges error in the court's explanation to the jury of

appellant's theory as to why he was not guilty, because it was a misstatement of his contentions. Once again, appellant has taken a part of one sentence of the court's charge to support his argument that the court misstated his contentions. When read as a whole, the charge was a correct summary of appellant's testimony as to why he was not guilty. The enumeration is not supported by the transcript, and this court cannot consider factual representations in a brief which are not supported by the transcript. *McCutchen v. State*, 177 Ga. App. 719, 722 (3) (341 SE2d 260) (1986).

e. Appellant's complaint as to the charge on theft by taking is based on his contention that he was improperly charged with theft by taking, rather than theft by deception or theft by conversion. Division 1 effectively disposes of this enumeration.

5. Lastly, we cannot agree that it was error to send the indictment out with the jury, including the names of the grand jurors who returned the indictment. Appellant cites no authority in support of this contention. It has always been the practice in this State to permit the jury to have in their room the indictment in a criminal case. *Salem v. State*, 228 Ga. 186, 188 (5) (184 SE2d 650) (1971); *Chandler v. State*, 143 Ga. App. 608, 610 (6) (239 SE2d 158) (1977). The names of the grand jurors are a part of the indictment. Although the Supreme Court has pointed out in *Salem* the advisability of masking or concealing extraneous or prejudicial matter contained in an indictment, we find nothing prejudicial, per se, in not covering the names of the grand jurors. A new trial without the inadmissible evidence must be had.

*Judgment reversed. Birdsong, C. J., Deen, P. J, Carley, Pope, and Benham, JJ., concur. McMurray, P. J., Banke, P. J., and Sognier, J., dissent.*

Sognier, Judge, dissenting.

I respectfully dissent. "Any statement or conduct of a person, indicating a consciousness of guilt, where such person is, at the time or thereafter, charged with or suspected of the crime, is admissible against him upon his trial for committing it." *Hixon v. State*, 130 Ga. 479, 482 (2) (61 SE 14) (1908); *Moon v. State*, 154 Ga. App. 312, 315-316 (5) (268 SE2d 366) (1980); *Conner v. State*, 160 Ga. App. 202, 203 (4) (286 SE2d 441) (1981); *Parker v. State*, 181 Ga. App. 590, 591 (2) (353 SE2d 83) (1987); *Bridges v. State*, 246 Ga. 323, 324 (2) (271 SE2d 471) (1980).

This court decides cases based on Georgia law, not on the Federal Rules of Evidence or law review articles expressing the author's personal opinion on specific subjects. It is only when there is no authority in Georgia on a given issue that we look to foreign jurisdictions or possibly legal encyclopedias to resolve the issue. As seen from the

cases cited above, there is ample authority in Georgia to resolve the issue presented.

*United States v. Gullo*, 672 FSupp. 99, 103, supra, does not support the statement in the majority that a serious Fifth and Fourteenth Amendments *Miranda* problem is created by admission of the objected-to evidence. On the contrary, *Gullo* held specifically that the introduction into evidence of Gullo's statements made during arbitration *did not* violate his constitutional rights under the Fifth and Fourteenth Amendments, and did not render his statements involuntary. Id. The basis of the holding in *Gullo* that evidence from the arbitration proceeding was not admissible was the fact that a New York statute *specifically provided* that statements made during arbitration would be confidential, and could not be used against a person in subsequent legal proceedings. The New York statute obviously has no application here.

The mediation proceedings in this case occurred while appellant was under criminal charges, and his conduct in signing a mediation agreement acknowledging his liability is conduct indicating a consciousness of guilt. Hence, under the rule enunciated repeatedly in the cases cited above, the evidence was admissible as bearing on appellant's guilt or innocence. Accordingly, I would affirm appellant's conviction.

I am authorized to state that Presiding Judge McMurray and Presiding Judge Banke join in this dissent.

DECIDED MARCH 18, 1988.

*Glenville Haldi*, for appellant.

*Lewis R. Slaton, District Attorney, Harvey W. Moskowitz, Assistant District Attorney*, for appellee.