A97A2162. ELDER v. THE STATE.
(495 SE2d 596)

JOHNSON, Judge.

A jury found John Douglas Elder guilty of theft by taking money from people he induced to invest in a business scheme and later converting the money to his own use. Elder appeals, and we affirm.

1. In his first enumeration of error, Elder contends the evidence was insufficient to support the verdict. Viewed in a light most favorable to support the verdict, the record shows that in July 1992, Elder met with the two victims and made numerous misrepresentations concerning his involvement in a process of turning trash into methane fuel ("gasification") and a process of turning trash into fertilizer ("composting"). He stated gasification technology was presently commercially available and that the gasification device could process everything from tires to baby diapers. According to Elder, he had a contract with a gasification company, Future Energy Resources Corporation ("FERCO"), which held the gasification patents. He stated that investments made would be used to support his contract with FERCO and that his company, Environmental Concerns, Inc. ("ECI"), had all exclusive source contracts for gasification plants built now and in the future. Elder specifically stated that "ECI would not mean anything without the contracts currently being in hand right now with the FERCO organization on the gasification and the composting contracts on the other side." In response to the investors' concerns, Elder represented that all necessary environmental permits for the gasification process had been obtained. Elder further represented the existence of an exclusive contract with the ERTH Group to obtain sludge to fuel the gasification technology.

During a meeting, Elder presented potential investors with income return projections based principally on the yield of the gasification process. He also presented a document outlining the business structure of ECI. The business structure document also stated that Elder had existing contracts with FERCO. Elder represented that the investment timeframe was extremely limited, and there was a need to act within a week's time. Based on Elder's representations at the meeting, which was recorded and the tape introduced into evi-

dence, one person wrote ECI a check for $100,000 and another wrote ECI a check for $50,000. According to one victim, Elder "was pretty convincing." The other victim testified that Elder's statements concerning the existence of exclusive source contracts, the fact that all the permits were in place, and the fact that this process could convert plastic and rubber into fuel were all important to her decision to invest because they showed that ECI would be effective.

Contrary to his representations, Elder knew there was no urgency to investing in ECI. Elder did not have existing contracts with FERCO and admitted to an investigator that his statements to the victims regarding FERCO contracts were misrepresentations. In fact, FERCO had not yet been formed in July 1992. While Elder did meet with individuals in January 1992 who ultimately formed FERCO and learned about gasification during that meeting, the January meeting did not result in any contract between Elder and FERCO. In fact, in March 1992, three months prior to Elder's meeting with the victims, the individuals who ultimately formed FERCO told Elder to cease and desist from representing an association between FERCO and Elder.

Elder was also aware that FERCO did not have the gasification patents in July 1992 and that gasification technology was not commercially available at that time. As of the date of the trial, gasification technology remained in the experimental stage. Elder knew that FERCO did not possess the necessary environmental permits. Elder further knew that the gasification technology contemplated could not handle large volumes of plastic and rubber.

Regarding composting, Elder misrepresented his exclusive arrangements with the composting operation. He failed to inform the victims about his complete lack of success in obtaining sludge source contracts.

By October 1992, Elder had converted a substantial amount of the victims' money to his own use. The victims wrote a letter to Elder on October 30, 1992, requesting a return of their investments and questioning Elder's involvement in gasification technology and the existence of FERCO contracts. Elder responded with a November 7, 1992 letter stating that all contracts were in place as previously represented.

"A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." OCGA § 16-8-2. The phrase "regardless of the manner in which the property is taken or appropriated" is broad enough to encompass theft by deception. Thus, a state may indict an individual for theft by taking, yet prove the elements of theft by deception.

See, e.g., *Stull v. State*, 230 Ga. 99, 101 (1) (196 SE2d 7) (1973); *Byrd v. State*, 186 Ga. App. 446, 447 (1) (367 SE2d 300) (1988).

"A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." OCGA § 16-8-3 (a). "A person deceives if he intentionally: (1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false; (2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed. . . ." OCGA § 16-8-3 (b).

The evidence was sufficient for a rational trier of fact to find Elder guilty beyond a reasonable doubt of theft by taking. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Byrd*, supra.

2. In his second enumeration of error, Elder asserts there was a material variance between the proof presented at trial and the allegation charged in the indictment. Count 1 of the indictment alleged that Elder "did unlawfully take $100,000.00 in United States Currency, the property of [victim 1] with a value exceeding $500.00[,] with the intention of depriving said owner of said property. . . ." Likewise, Count 4 of the indictment alleged that Elder "did unlawfully take $50,000.00 in United States Currency, the property of [victim 2] with a value exceeding $500.00, with the intention of depriving said owner of said property. . . ."

Elder's argument that the indictment charged the wrong offense, that is, theft by taking instead of theft by deception, fails. This argument has been addressed and decided adversely to Elder in numerous cases due to the broad language in the theft by taking statute. See *Stull*, supra; *Byrd*, supra.

*Walker v. State*, 146 Ga. App. 237 (1) (246 SE2d 206) (1978), does not demand a different result. "[U]nlike the trial court in *Walker*, the trial court in this case 'did not charge the jury that theft by taking could consist of the unlawful appropriation of property lawfully obtained, and thus there is no possibility that the jury based its verdict on that theory rather than the theory alleged in the indictment.' [Cit.]" *Bell v. State*, 220 Ga. App. 293, 294 (1) (469 SE2d 714) (1996). Moreover, as we found in Division 1, the evidence was sufficient to enable a rational jury to conclude beyond a reasonable doubt that Elder deceived the victims into giving him investment checks and that such deception constituted an unlawful taking. No fatal variance existed in this case. See *Spray v. State*, 223 Ga. App. 154, 156 (1) (476 SE2d 878) (1996); *Bell*, supra.

3. In his third enumeration of error, Elder contends the trial court erred in denying his motion for new trial. However, Elder does not address this enumeration of error in his brief by including cita-

tion of authority or argument. Therefore, to the extent this enumeration of error attempts to include issues not addressed in Elder's preceding two enumerations of error, this enumeration is deemed abandoned. Court of Appeals Rule 27 (c) (2).

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 8, 1998.

*Kennedy & Kennedy, Reid G. Kennedy, Roderick H. Martin*, for appellant.

*Thomas J. Charron, District Attorney, Thurbert E. Baker, Attorney General, Michael E. Hobbs, Counsel to the Attorney General, Kevin H. Hudson, Assistant Attorney General*, for appellee.