## A01A0192. ADAMS v. THE STATE.
(549 SE2d 539)

POPE, Presiding Judge.

Randolph Phillip Adams appeals following his conviction on one count of theft by deception. We affirm.

Adams was indicted on five counts of theft by deception under OCGA § 16-8-3 and three counts of terroristic threats pursuant to OCGA § 16-11-37 (a). The state alleged that Adams had taken money from a number of women through false representations and had threatened some of the women when they sought to get their money back. Following the presentation of the state's evidence, however, the trial court granted a directed verdict of acquittal on two counts of theft by deception and two counts of terroristic threats. The jury convicted Adams on the remaining four counts. In response to Adams' motion for new trial, the state conceded that there was insufficient evidence to support his conviction on the remaining count of terroristic threats, and that charge was dismissed. The trial court subsequently granted Adams' motion for new trial as to two of the counts of theft by deception, but sustained his conviction on one count. On appeal, Adams contends that his motion should also have been granted as to that count because there was insufficient evidence to support the verdict.

The evidence pertinent to the remaining theft by deception charge showed that Angela Davenport met Adams in April 1996. In June 1997, Adams and Davenport began dating. Around this time, Adams told Davenport that he was a partner in a company called Premier Sports & Events and presented her with a business card listing him as vice president and partner in the business. He told Davenport that Premier arranged parties and entertainment for sports celebrities and other businesses.

But Felicia Smith, Premier's owner, testified that while Adams was an employee of the business, he had never been either a vice president or a partner. She said that she had given Adams a business card with the company logo, but with no title under his name, and she never authorized Adams to carry a business card representing himself to be a vice president or partner in the company.

In addition to his representations about his position at Premier, Adams told Davenport that he had attended Pennsylvania State University and Harvard University and that he had an MBA from the Wharton School of Business. He also said that he had made "millions" working at a Jewish bakery in Philadelphia. The state never presented any evidence to demonstrate that these assertions were false. He also drove a Porsche and a Range Rover, although the evidence at trial showed that another woman named as a victim in the indictment against Adams had purchased the Porsche for him and

eventually hired a private investigator to recover the car.

In July and August 1997, Davenport wrote Adams a series of checks totaling in excess of $8,100, representing the proceeds from her 401k account. The memo lines on three of the checks contained notations reading "loan" or "loan to Phillip." Davenport explained that she made those notations to ensure that the money could not be considered a gift. She testified that she gave Adams at least $6,900 of this money for investment in a music business and that he told her that he could get her a ten percent return on her investment. Adams never gave Davenport any documentation of her investment, but he told her that she would have her money back by the following November. When Davenport inquired about her money in November, however, Adams responded by telling her to "stand in line with the sharks." And when he then threatened to slit her throat and "cut [her] up," Davenport became scared and made no further attempts to recover the money.

Under OCGA § 16-8-3 (a), "[a] person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." The statute defines several methods by which a person may intentionally deceive another, including those instances where the person:

> (1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false; (2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed; [or] (3) Prevents another from acquiring information pertinent to the disposition of the property involved. . . .

OCGA § 16-8-3 (b). The statute also provides that the terms "[d]eceitful means" and "artful practice" do not include "falsity as to matters having no pecuniary significance, or exaggeration by statements unlikely to deceive ordinary persons in the group addressed." OCGA § 16-8-3 (b).

Adams contends that the only matter that the state proved to be false in his dealings with Davenport was his representation that he was a vice president and partner in Premier. He asserts that representation had no "pecuniary significance" as required by the statute.

From our review of the case law, it appears that Georgia's appellate courts have never addressed the meaning of "pecuniary significance" as used in this Code section. But under a common sense reading of the phrase, we interpret the language to mean that the misrepresentation or false impression upon which a prosecution is

based must somehow relate to the theft of the property at issue. In other words, a charge of theft by deception cannot be sustained where the only falsity proven is completely unconnected to theft of the property.

Under the facts of this case, we find that the jury could have interpreted Adams' misrepresentation regarding his position at Premier to have "pecuniary significance" because it was used to induce Davenport to part with her money. The jury could have found that by inflating his employment status, Adams hoped to persuade Davenport that he was better qualified to invest her retirement funds. The evidence sustained a finding, therefore, that Adams created a false impression of his qualifications to handle Davenport's money. And although the better practice would be to present specific testimony that Davenport relied upon this impression, we find that the evidence was sufficient for the jury to infer reliance based upon Davenport's decision to hand over her retirement funds to Adams for investment in a music business. See generally *Sinyard v. State*, 243 Ga. App. 218, 220 (1) (531 SE2d 140) (2000).

Further, the false impression created by Adams was of an existing fact, not a promise of a future event, distinguishing *Robinson v. State*, 198 Ga. App. 431 (401 SE2d 621) (1991), upon which Adams relies. The fact that Adams may also have made representations as to future events — that he could get a ten percent return and that he would return the money in November 1997 — does not affect this evidence:

> A statement that the accused intended thereafter to do a particular thing, made at the time of and in connection with certain other statements as to a past fact, shown to have been false, does not remove from the accused the consequences which the law attaches to false representations made with intent to deceive, and by which one is defrauded and cheated. This is true notwithstanding the representation as to what the accused intended to do was a part of the inducement under which the defrauded person parted with his money.

(Citation and punctuation omitted.) *Harris v. State*, 141 Ga. App. 213, 214-215 (1) (233 SE2d 21) (1977).

Accordingly, we find that there was sufficient evidence for the jury to find beyond a reasonable doubt that Adams was guilty of theft by deception as defined in OCGA § 16-8-3 (b) (1). See generally *Elder v. State*, 230 Ga. App. 122 (495 SE2d 596) (1998). In addition, we agree with the trial court that the jury also could have found that by threatening Davenport when she asked about her money, Adams

prevented her "from acquiring information pertinent to the disposition of [her] property" in violation of OCGA § 16-8-3 (b) (3). Adams' conviction is therefore affirmed.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MAY 29, 2001 

*Tony L. Axam, Gwendolyn Johnson,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bradley M. Elbein, Alvera A. Wheeler, Assistant District Attorneys,* for appellee.