## A07A1807. PATTERSON v. THE STATE.
(658 SE2d 210)

MIKELL, Judge.

A Chatham County jury found James Patterson, Jr., a mortgage consultant, guilty of eight counts of theft by taking money from people to obtain mortgages or make down payments, failing to do so, and then failing to return their money. Patterson, who represented himself at trial but was represented by counsel at the sentencing hearing, was sentenced to twenty years, with eight to serve, on the first two counts, plus ten years' probation on Counts 3 and 5 through 8, to be served concurrently. On Count 4, a misdemeanor, he was sentenced to 12 months' probation. He also was ordered to pay restitution of $42,589. On appeal, Patterson challenges the sufficiency of the evidence, specifically as to three counts; argues that the trial court erred in two of its jury charges; contends that the court did not comply with statutory procedures when it ordered restitution; and asserts that the court erred in rejecting his ineffective assistance of counsel claim. We affirm the convictions on Counts 1 through 3 and 5 through 8 but reverse the conviction on Count 4. We vacate and remand the sentencing order for the court to vacate the sentence on that count as well as the restitution attributable to it.

1. Patterson specifically contends that the evidence was insufficient to support the verdict with respect to Counts 3, 4, and 7 of the indictment, corresponding to victims Joe Williams, Jr., Leroy Kennedy, and Virdie Davis.

---

When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

Construed in favor of the verdict, the evidence supporting those three theft-by-taking convictions shows that Williams and Kennedy heard a radio advertisement in which Patterson's company, New Genesis, offered assistance in obtaining mortgages, while Davis heard about Patterson through her daughter. Williams testified that he went to Patterson's office to finance the purchase of a house. Patterson asked Williams for money, and Williams gave him $2,000 in cash. Patterson did not give him a receipt. Later Patterson called Williams and claimed he could not find the money. Patterson requested $1,750, and Williams gave it to him, in cash. Williams also gave him $350 for an appraisal. Three or four months passed without progress, and Williams called Patterson at least every other day. Patterson kept telling him they were working on it. Williams tired of this response and demanded his money back. Williams testified that Patterson was never in his office. One day, Williams sat in his car in Patterson's parking lot nearly an entire day waiting for him. Finally, Patterson showed up and said he was "working on" getting Williams's money back. Williams said he was not leaving until he got his money back. Patterson returned half of Williams's $4,100. On cross-examination, Williams admitted that he gave Patterson an additional $500 in consulting fees, and that Patterson "really was working" for it.

Kennedy testified that he told Patterson he was looking for a house priced around $100,000. Patterson requested an application fee of $165, which Kennedy paid, and referred him to an agent to look for a house. After Kennedy found a house, Patterson demanded $1,200 to "get started." Kennedy realized that "didn't sound right" and did not give him any more money. When he tried to get his $165 back, Patterson promised to return it but was never in the office when Kennedy went to retrieve it. Kennedy testified that Patterson did nothing to earn the money. However, on cross-examination, Kennedy admitted that Patterson took his employment information and pulled

---

[1] (Citations and footnotes omitted.) *Christian v. State*, 288 Ga. App. 546 (1) (654 SE2d 452) (2007).

his credit report while they were sitting in the office. Kennedy testified that he gave Patterson $165 for pulling up his credit report.

Davis testified that she gave Patterson financial information; he told her to find a house, and promised to arrange the financing. Davis found a house, using the same agent whom Kennedy had used, and gave Patterson a cashier's check for $4,000. Patterson told Davis that the check was for earnest money. A closing was scheduled, but never took place, and Davis was not able to reach Patterson until after she threatened to file a police report. Patterson promised to return her money but never did so. On cross-examination, Davis admitted that Patterson had arranged a loan and a closing, but the closing was stopped by the lender's attorney after a credit check revealed unpaid debts. On redirect, Davis testified that the credit report cost $14.50; that she never agreed to pay Patterson any consulting fees; that he admitted that he owed her $4,000; and that she obtained a judgment against him in magistrate court, which she has not collected. Patterson testified that Davis stopped the loan process, and if she had not, the closing would have taken place.

For each victim except Kennedy, Patterson was indicted for one count of theft by taking currency in excess of $500; on Count 4, he was charged with taking less than $500.

> A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated.[2]

> Under the statute, the phrase "regardless of the manner in which the property is taken or appropriated" is a catch-all phrase rendering our theft by taking statute broad enough to encompass theft by conversion, theft by deception or any other of the myriad and even yet-to-be-concocted schemes for depriving people of their property.[3]

Thus, the state may indict someone for theft by taking, but prove theft by deception, which is committed when a person obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property.[4] Or, the state may prove theft by

---

[2] OCGA § 16-8-2.

[3] (Citations and punctuation omitted.) *Spray v. State*, 223 Ga. App. 154, 155 (1) (476 SE2d 878) (1996).

[4] *Bradford v. State*, 266 Ga. App. 198, 201-202 (2) (596 SE2d 715) (2004); OCGA § 16-8-3 (a).

conversion,[5] which is committed when a person lawfully obtains property "under an agreement or other known legal obligation to make a specified application of such funds," and then "knowingly converts the funds . . . to his own use in violation of the agreement or legal obligation."[6]

(a) Count 3. Patterson contends that the evidence fails to show beyond a reasonable doubt that he did not intend to perform under his agreement with Williams. "When the alleged taking occurs when a defendant fails to perform under a contract with the victim, the 'real issue' is whether the defendant accepted or retained the victim's money with no intention to satisfy his obligations under the contract."[7] Whether Patterson intended to fulfill his contractual obligations when he took Williams's money was a question for the jury. Based on Williams's testimony as a whole, the jury was entitled to infer that Patterson acted with criminal intent and to find him guilty of theft by taking as charged in Count 3 of the indictment.[8]

(b) Count 4. Patterson's conviction of theft by taking $165 from Kennedy cannot be sustained. Even though the state presented evidence that a credit report cost only $14.50, and that Patterson promised to return Kennedy's money, Kennedy testified that Patterson performed the service for which he was hired. Accordingly, even construing the evidence in the light most favorable to sustaining the verdict, the state failed to show that Patterson did not intend to perform the service at the time he accepted money from Kennedy.[9]

(c) Count 7. The evidence in support of this count shows that Davis gave Patterson $4,000 to be applied as earnest money for the purchase of an $80,000 house. There was no evidence that the money was applied in this fashion, as the closing never took place. When Davis demanded her money back, Patterson said he needed a few days to get it to her. He never did. Also, as noted above, Davis never agreed to pay Patterson any consulting fees. The fact that Patterson arranged a loan that never closed was simply a piece of evidence for the jury to consider in determining whether he possessed the requisite criminal intent to convert the $4,000 to his own use. The jury was

---

[5] *Byrd v. State*, 186 Ga. App. 446, 447 (1) (367 SE2d 300) (1988).

[6] OCGA § 16-8-4 (a).

[7] (Punctuation and footnote omitted.) *Matthiessen v. State*, 277 Ga. App. 54, 55 (1) (625 SE2d 422) (2005).

[8] See, e.g., *Smith v. State*, 265 Ga. App. 57, 59 (1) (592 SE2d 871) (2004) (contractor abandoned project, promised to return unearned portion of down payment, but did not).

[9] See, e.g., *Gordon v. State*, 257 Ga. 335, 336 (359 SE2d 634) (1987) (theft by deception conviction reversed where invoices showed inflated, but not false, charges for film processing and printing services).

authorized to find Patterson guilty beyond a reasonable doubt of theft by taking as charged in Count 7 of the indictment.[10]

(d) Patterson contends that his convictions on all counts must be reversed because the state failed to show that he did not intend to perform the services at the time he accepted money from each of the alleged victims, an essential element of theft by deception. He also alleges that the state did not prove theft by conversion because the evidence shows that each victim gave money to Patterson in exchange for his promise to provide future services and none of the victims gave specific instruction on how the money should be applied. Patterson's argument is premised upon *Hill v. State*,[11] in which we reversed a conviction of theft by conversion. In *Hill*, a property seller paid the appellant $2,500 to help the purchaser obtain financing, and the appellant promised to return the fee if his efforts were unsuccessful. Appellant tried to arrange a mortgage but could not, and the seller requested his money back. Appellant gave the seller a check drawn on insufficient funds.[12] Appellant was indicted for, and convicted of, theft by conversion. We held that the evidence did not support a conviction under this theory because the seller did not give appellant any specific instructions as to how the money should be applied.[13]

Several factors distinguish the case at bar from *Hill*. Most significantly, the indictment in this case charged the defendant with theft by taking, leaving the state free to prove any theory of theft. For example, as to Count 1, the state proved that Aaron Miller gave Patterson four checks: for $2,500, $170, $700, and, finally, $10,000, for fees associated with the purchase of a building. Patterson said he scheduled a closing, but Miller called the alleged lender and found that the lender had no record of him. Miller was then deployed to Iraq. Upon his return, Patterson promised him $10,000 but gave him a check for $5,000. The check was drawn on a closed account. Miller obtained a judgment against Patterson for $15,000 plus court costs. Even *Hill* instructs that "[o]ne who obtains funds by making promises of the performance of services which he does not intend to perform or knows will not be performed may be guilty of theft by deception under OCGA § 16-8-3 (b) (5)."[14] Similarly, as to Count 2, the state proved that Patterson asked Elizabeth Blair to pay closing costs "up front"; she gave him $4,929, then he lied to her about what happened to the

---

[10] See *Byrd*, supra.

[11] 198 Ga. App. 1 (401 SE2d 48) (1990).

[12] Id. at 1 (1).

[13] Id. at 2 (1). See also *Myrick v. State*, 210 Ga. App. 393, 394 (436 SE2d 100) (1993) (theft by conversion requires showing that money or property be obtained under agreement to make a specific application of the money).

[14] *Hill*, supra at 3 (2).

money. As to both counts, the evidence proved theft, either by taking or by deception. Furthermore, as to Count 7, the victim specified that the funds were to be applied to earnest money, unlike the situation in *Hill*. Accordingly, *Hill* provides no basis for reversal. Finally, we have reviewed the evidence in support of Patterson's conviction on Counts 5, 6, and 8, and find it sufficient for any rational trier of fact to find him guilty of theft by taking.[15] In sum, the conviction on Count 4, a misdemeanor, is reversed, and the conviction on the remaining counts is affirmed.

2. Patterson contends the trial court improperly singled out his exercise of his constitutional right to testify when it charged the jury that when the defendant testifies,

> he at once becomes the same as any other witness. . . . And in determining the degree of credibility that shall be accorded to his testimony, the witness [sic] has a right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor and conduct upon the witness stand.

The charge is a direct quote from *Walker v. State*,[16] and has repeatedly been approved by our Supreme Court.[17] "Contrary to arguments advanced by [Patterson], no intervening decision by either the Supreme Court of Georgia or the United States Supreme Court calls the validity of this charge into question."[18]

3. In his next enumerated error, Patterson argues that the court erred in recharging the jury on prior consistent statements. After the jury retired, the prosecutor pointed out that the trial court's charge on that point of law was incomprehensible, as it was based on a previously recommended standard jury instruction that had been revised.[19] The trial court recalled the jury, and gave the newly revised pattern charge,[20] as follows:

---

[15] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Patterson does not specifically challenge his convictions as to Counts 1, 2, 5, 6, and 8, other than by arguing that they should be reversed based on *Hill*, supra.

[16] 132 Ga. App. 274, 278 (5) (208 SE2d 5) (1974).

[17] *Kennedy v. State*, 277 Ga. 588, 590 (2) (592 SE2d 830) (2004); *Larry v. State*, 266 Ga. 284, 286-287 (3) (466 SE2d 850) (1996); *Pitts v. State*, 253 Ga. 461, 462 (5) (321 SE2d 708) (1984); *Johns v. State*, 239 Ga. 681, 684 (4) (238 SE2d 372) (1977).

[18] (Footnote omitted.) *Hall v. State*, 261 Ga. App. 64, 68 (2) (581 SE2d 695) (2003).

[19] See *Boyt v. State*, 286 Ga. App. 460, 465-466 (3) (649 SE2d 589) (2007).

[20] See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.31.60 (3d ed. 2004).

[S]hould you find that any witness has made a statement prior to the trial of this case that is consistent with that witness's testimony from the witness[ ] stand, and such prior consistent statement is material to the case and the witness's testimony, . . . then you are authorized to consider the other statement as substantive evidence.

The court excused the jury, and Patterson raised no objections to the recharge. He now contends on appeal that the recharge "did not thoroughly correct the error." Although we have held that the better practice is for the trial court not to charge at all on prior consistent statements,[21] here, we find no error in the context of Patterson's claim, e.g., that harmful error resulted from the trial court's failure to expressly withdraw the wrong charge when it gave the revised charge.[22]

4. Patterson complains that the trial court failed to follow OCGA § 17-14-10, which sets out the factors to be considered in ordering restitution, during the sentencing hearing. Patterson also contends that the court erred in failing to enter written factual findings as to those factors pursuant to OCGA § 17-14-8. Finally, he challenges the amount of restitution ordered, $42,589. We reject these claims. Although a restitution order formerly required written findings of fact,[23] that is no longer the case since OCGA § 17-14-8 was amended in 2005.[24] And, pretermitting whether the hearing transcript reflects that the court considered each factor set out in OCGA § 17-14-10, we hold that Patterson has waived his right to challenge the order. At the hearing, Patterson testified: "I fully understand what I did was wrong. . . . I now feel that it's my responsibility to pay these people back. . . . *They will be made whole.*" As to the amount, defense counsel stated, "I certainly defer to the State on that." Counsel also offered a payment schedule, arguing for probation so that Patterson would be able to "pay the money back . . . as soon as possible." Patterson never objected to the imposition of restitution, and he acquiesced in the amount thereof. "Under these circumstances, we decline to reverse the restitution order, as a litigant cannot submit to a ruling or

---

[21] *Boyt,* supra at 468 (3).

[22] See generally *Altman v. State,* 229 Ga. App. 769, 771-772 (6) (495 SE2d 106) (1997) (proper instruction on recharge may correct an improper instruction given in the original charge to the jury).

[23] See *Steele v. State,* 270 Ga. App. 488, 489-490 (606 SE2d 664) (2004).

[24] See Ga. L. 2005, Act 20, § 5, effective July 1, 2005. The sentencing hearing in this case took place in 2006.

acquiesce in the holding, and then complain of the same on appeal."[25] However, the sentencing order must be vacated and remanded for the court to reduce the restitution order by $165, the amount assessed in connection with Count 4, as we have reversed the conviction on that count.

5. In a related enumeration of error, Patterson argues that counsel who was appointed for his sentencing hearing rendered ineffective assistance by acquiescing in the amount of restitution. Essentially, he contends that counsel should have introduced into evidence at the hearing the magistrate court judgments entered against him in favor of three of the victims as well as his bankruptcy petition, which listed these as "possible judgments" and as "unsecured nonpriority claims." Patterson argues that the civil judgments constitute a set-off against the restitution and that the trial court should have taken his earnings and income into account as reflected in the petition. Counsel's failure to call these to the court's attention is alleged to be deficient performance.

> In order to establish ineffectiveness of trial counsel, appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo.[26]

Here, Patterson acted as his own trial counsel and only accepted appointed trial counsel to represent him at sentencing. At the hearing on the motion for new trial, counsel testified that Patterson had fired her before trial, and she turned over to him all the documents in question; that counsel had never considered presenting the bankruptcy petition at sentencing; that the amount of restitution ordered "was the amount that the people had paid him"; and that every witness testified to a specific amount. Apparently, counsel acquiesced in the state's calculation of the amount of restitution because it was

---

[25] (Punctuation and footnote omitted.) *Gorham v. State*, 287 Ga. App. 404, 406 (2) (651 SE2d 520) (2007).

[26] (Citations and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

correct, although Patterson argues otherwise for the first time on appeal. And counsel's decision not to introduce the bankruptcy petition is presumed strategic absent evidence to the contrary.[27]

Further, Patterson's argument that the civil judgments should have been set off against the restitution is unavailing, as he did not bear his burden of showing that he had paid them through the bankruptcy trustee or otherwise, nor did he provide any such information to counsel. Moreover,

> [a]lthough a restitution order is enforceable as is a civil judgment by execution, OCGA § 17-14-13 (a), it does not bar a civil action against the offender. OCGA § 17-14-11. However, any payments made by an offender to a victim under an order for restitution may be a setoff against any judgment awarded to the victim in a civil action based on the same facts for which restitution was ordered.[28]

In other words, what is prohibited is a double recovery. We note that OCGA § 17-14-12 permits the court to modify its restitution order, which the trial court in this case would be required to do in order to set off any payments that may actually be made to the victims by the bankruptcy trustee.

We conclude that none of the evidence presented at the hearing on the motion for new trial would have affected the outcome of the combined sentencing/restitution hearing, and the trial court did not err in rejecting Patterson's ineffective assistance claim.

*Judgment affirmed in part and reversed in part, sentence vacated and case remanded. Johnson, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 20, 2008.

*Steven L. Sparger*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney*, for appellee.

---

[27] See *Vincent v. State*, 276 Ga. App. 415, 417 (2) (623 SE2d 255) (2005).
[28] (Citation and punctuation omitted.) *Total Supply v. Pridgen*, 267 Ga. App. 125, 126, n. 1 (598 SE2d 805) (2004).