**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J. and SELF, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 19, 2017**

# In the Court of Appeals of Georgia

A17A0858. MATHIS v. THE STATE.                    SE-027C

SELF, Judge.

Following a jury trial, the Superior Court of Floyd County entered judgments of conviction against Christopher Mathis on 52 counts related to Mathis' theft of more than $600,000 as the operator of a Ponzi scheme.[1] With the exception of

---

[1] The jury returned verdicts of guilty against Mathis on four counts of felony deposit account fraud (OCGA § 16-9-20) (counts 1, 6, 10, and 14); thirteen counts of theft by taking (OCGA § 16-8-2) (counts 2, 7, 11, 15, 18, 21, 27, 31, 34, 38, 41, 45, and 48); thirteen counts of theft by conversion (OCGA § 16-8-4) (counts 3, 8, 12, 16, 19, 22, 28, 32, 35, 39, 42, 46, and 49); fourteen counts of theft by deception (OCGA § 16-8-3) (counts 4, 9, 13, 17, 20, 23, 25, 29, 33, 36, 40, 43, 47, and 50); five counts of exploitation of an elder person (OCGA § 30-5-8.C) (counts 5, 24, 30, 37, and 44); and one count each of first degree forgery (OCGA § 16-9-1 (b)) (count 26), secreting property to defraud another (OCGA § 16-9-53) (count 51), and violation of oath of public office (OCGA § 16-10-1) (count 54). Counts 52 (theft by taking) and 53 (livestock theft [OCGA § 16-8-20]) were severed from Mathis' trial, and he entered pleas of guilty to these two counts following trial for the remaining 52 counts.

correcting three of Mathis' sentences, the trial court denied Mathis' motion for new trial as amended and Mathis appeals. Mathis now contends that the trial court erred in a portion of its jury instruction and that it failed to merge his convictions for theft by conversion and theft by deception into his convictions for theft by taking. Because we conclude the trial court failed to merge Mathis' convictions for theft by taking, we vacate those convictions and remand to the trial court for resentencing. We find no additional error, and therefore affirm Mathis' remaining convictions.

Viewed in the light most favorable to the verdict, the evidence revealed that Mathis served as the elected chief magistrate of Floyd County. Mathis also owned a cattle farm. At various times throughout 2008 and 2009, Mathis approached at least 13 potential investors to solicit funds for an investment in cattle. According to the victims, most of whom had known Mathis for a substantial length of time, Mathis proposed purchasing the cattle and maintaining them on his farm, breeding them, and then selling them for a profit, splitting the profit with the victims. Collectively, the victims gave Mathis in excess of $898,000. With limited exceptions,[2] Mathis failed

_____

[2] For example, Mathis repaid three early victims in full and a fourth early victim almost in full, but then only paid one couple $5,000 following their original investment of $59,500 and gave another couple $1,400 and one head of beef for slaughter following their original investment of $25,000.

2

to repay the victims any of the money they invested or any return on their investment. On several occasions, Mathis gave a check to a victim representing the victim's original investment and their profit; however, those checks were dishonored upon presentment for insufficient funds. Of the 13 victims, 5 were over the age of 65. Mathis' scheme began to unravel when one of the victims received a bad check for $61,000 from Mathis and reported the check to the Rome Judicial Circuit District Attorney's Office. Local authorities contacted the Georgia Bureau of Investigation, which investigated and detailed Mathis' scheme.

1. Mathis first contends that the trial court erred by instructing the jury that it "may, if you choose, review the details of each charge" of the indictment during deliberations. According to Mathis, the trial court's instruction essentially told the jury it was not necessary to read the indictment, which was particularly harmful given the sheer size and technical nature of the indictment. However, in view of the jury charge in its entirety, we find no reversible error.

After the trial court administered the oath to the venire panel, but before jury selection, the trial court read the 52-count indictment in its entirety to the panel. Thereafter, in administering the oath to the jurors selected for trial, the trial court noted that Mathis was "charged with four counts of deposit account fraud, 13 counts

3

of theft by taking, 13 counts of theft by conversions, 14 counts of theft by deception, five counts of exploitation of [an] elder person, one count of forgery in the first degree, one count of damaging, destroying and secreting property to defraud another and one count of violation of oath of public office for a total of 52 counts. . . ." Following the charge conference, the trial court noted that the parties agreed "the Court could summarize the indictment in the same fashion it did when it administered the oath to the jury." As a result, the trial court charged the jury that Mathis was charged with "52 offenses consisting of 4 counts of deposit account fraud, 12 counts of theft by taking, 13 counts of theft by conversion, 14 counts of theft by deception, 5 counts of exploitation of an elder person, one count of forgery in the first degree, one count of damaging, destroying and secreting property and one count of violation of oath of public office." The trial court further instructed the jury that "[y]ou will have the indictment out with you in the jury room during the deliberations, at which time you may, if you choose, review the details of each charge." Trial counsel did not object to the trial court's instruction at the close of its charge. Mathis now contends that the trial court's instruction to the jury that it "may, if you choose, review the details of each charge" is error.

4

As a threshold matter, because Mathis failed to raise this argument as a "specific objection and the grounds for such objection before the jury [retired] to deliberate," OCGA § 17-8-58 (a), the argument has been waived. See OCGA § 17-8-58 (b). Nonetheless, we are required to evaluate the allegedly erroneous jury instruction for plain error. See OCGA § 17-8-58 (b); *State v. Kelly*, 290 Ga. 29, 32-33 (2) (a) (718 SE2d 232) (2011); *Reyes v. State*, 322 Ga. App. 496, 501 (4) (745 SE2d 738) (2013). When analyzing jury instructions for plain error, we consider four prongs:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. (Emphasis in original.)

*Reyes*, 322 Ga. App. at 501 (4) (citing *Kelly*, 290 Ga. at 33 (2) (a)). "Stated more succinctly, the proper inquiry is whether the instruction was erroneous, whether it was

5

obviously so, and whether it likely affected the outcome of the proceedings." (Citation and punctuation omitted.) *Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012). To that end, "jury instructions must be read and considered as a whole in determining whether the charge contained error." (Citations and punctuation omitted.) *Reyes*, 322 Ga. App. at 501 (4).

Pretermitting the remaining prongs of the plain error analysis, we conclude that Mathis cannot demonstrate the third prong: that an error in the trial court's charge "affected the outcome of the trial court proceedings." *Reyes*, 322 Ga. App. at 501 (4). See also *Henderson v. State*, 320 Ga. App. 553, 562 (8) (740 SE2d 280) (2013) ("[P]retermitting whether the first, second, or fourth prongs were satisfied, Henderson failed to satisfy the third."). Upon review of the instructions as a whole, the trial court recited the charges against Mathis and properly instructed the jury on the presumption of innocence, that no conviction could result "unless and until each element of the crime is proven to you beyond a reasonable doubt," that the State bore the burden "to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt," and that the burden of proof never shifts to the defendant. See, e.g., id.

In addition, the trial court's instruction comports with the relevant pattern jury instructions for the offenses charged. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 4th ed. (2007) §§ 2.64.20, 2.64.60, 2.64.90. Moreover, the trial court emphasized the importance of the indictment by stating that "if after considering the testimony and evidence presented to you together with the charge of the Court you should find and believe beyond a reasonable doubt that the defendant . . . did . . . commit the offenses *as alleged in the indictment*, you would be authorized as to each of said counts to find the defendant guilty." (Emphasis supplied.) Similarly, the verdict form set out each count of the indictment separately. Finally, the indictment was provided to the jury during deliberations, and the verdict form prepared for the jury contained only those charges included in the indictment.

In conclusion, while the trial court's statement to the jury that it "may, if you choose, review the details of each charge" is imprecise and should be avoided, we conclude that Mathis has failed to demonstrate that the statement "affected the outcome of the trial court proceedings." See *Reyes*, 322 Ga. App. at 501 (4). Accordingly, when viewed in its entirety, we find there is no plain error in the trial court's charge. See *Kelly*, 290 Ga. at 32-33 (2) (a); *Reyes*, 322 Ga. App. at 501 (4).

7

2. Second, Mathis contends the trial court erred in failing to merge his convictions for theft by conversion and theft by deception into his convictions for theft by taking because "even if [each allegation of theft] involve[s] different elements, they were convictions from taking the same money from the same victim." While we agree that certain of Mathis' convictions should have merged for sentencing, we do not agree that theft by conversion and theft by deception merge into theft by taking.

"Whether two offenses should be merged is a question of law, and we apply a 'plain legal error' standard of review." (Citation omitted.) *Lavigne v. State*, 299 Ga. App. 712, 714 (2) (683 SE2d 656) (2009). OCGA § 16-1-7 (a) provides that

> [w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if:
>
> (1) One crime is included in the other; or
>
> (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

Here, Mathis was charged with theft by taking, theft by deception,[3] and theft by conversion.[4] Under OCGA § 16-8-2, "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, *regardless of the manner in which the property is taken or appropriated.*" (Emphasis supplied.) As a result,

> [u]nder the [theft by taking] statute, the phrase "regardless of the manner in which the property is taken or appropriated" is a catch-all phrase rendering our theft by taking statute broad enough to encompass theft by conversion, theft by deception or any other of the myriad and even yet-to-be-concocted schemes for depriving people of their property.
>
> Thus, the [S]tate may indict someone for theft by taking, but prove theft by deception. . . . Or, the [S]tate may prove theft by conversion. . . .

---

[3] "A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." OCGA § 16-8-3 (a).

[4] Theft by conversion occurs when, "having lawfully obtained funds or other property of another including, but not limited to, leased or rented personal property, under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation." OCGA § 16-8-4 (a).

9

*Patterson v. State*, 289 Ga. App. 663, 665-666 (1) (658 SE2d 210) (2008). Using Counts 2 through 4 as an example, the indictment alleged that Mathis, "BETWEEN THE 18th DAY OF FEBRUARY, 2008 AND THE 8th DAY OF JULY, 2010" did "unlawfully appropriate [$25,000] with the intention of depriving [the victims] of said property"; did "knowingly convert [$25,000] to his/her own use in violation of [an] agreement and legal obligation [to make a specified disposition of the property]"; and did obtain $25,000 from the victims

> with the intention of depriving the [victims] of said property by deceitful means and artful practice by CREATING THE IMPRESSION THAT SAID MONEY WAS TO BE USED TO PURCHASE CATTLE, THE OWNERSHIP OF WHICH WAS TO BE SHARED WHEN [MATHIS] HAD NO INTENTION OF PURCHASING CATTLE FOR SHARED OWNERSHIP[.] (Emphasis in original.)

In short, then, for the solicitation of a single sum of money from each of 13 separate victims, the State indicted Mathis for theft by taking, theft by conversion, and theft by deception, resulting in 13 counts[5] of each crime.[6]

---

[5] A fourteenth count of theft by deception (Count 25) was the result of one of the 13 victim's sons' participation in the victim's investment.

[6] Compare *Kilby v. State*, 335 Ga. App. 238, 244 (3) (780 SE2d 411) (2015) (no merger of multiple counts of theft by taking where defendant took money from multiple victims); *Arnold v. State*, 293 Ga. App. 395, 398 (3) (667 SE2d 167) (2008)

10

We note that theft by taking proscribes certain criminal conduct generally, while theft by conversion and theft by deception are specific crimes.[7] As a result, we conclude that Mathis' convictions for theft by taking merge pursuant to OCGA § 16-1-7 (a) (2).[8] Cf. *Adkins v. State*, 301 Ga. 153, 160-161 (4) (800 SE2d 341) (2017) (general crime of aggravated assault with a deadly weapon (OCGA § 16-5-21 (b) (2)) merged into specific crime of aggravated assault by discharging a firearm from within a motor vehicle (OCGA § 16-5-21 (b) (4))); *Spurgeon v. State*, 214 Ga. App. 227 (447 SE2d 164) (1994) (dicta that "theft by taking charges merged with the [theft by] deception charges"); *Talley v. State*, 200 Ga. App. 442, 446 (4) (408 SE2d 463) (1991) (in partial reliance upon OCGA § 16-1-7 (a) (2), general crime of possession of marijuana merged with specific crime of possession of marijuana with intent to distribute). But see *Kennedy v. State*, 205 Ga. App. 152, 156 (5) (a) (421 SE2d 560)

(no merger where defendant took sums from same victim on separate occasions).

[7] For this reason, the "required evidence" test is not applicable. See *Drinkard v. Walker*, 281 Ga. 211, 216, n. 32 (636 SE2d 530) (2006); *Stuart v. State*, 318 Ga. App. 839, 843 (734 SE2d 814) (2012) (same).

[8] Because theft by taking is the more general crime and Mathis' sentences for theft by taking must be vacated, see OCGA § 16-1-7 (a) (2), we need not decide in the first instance whether theft by taking merges into theft by conversion or theft by deception.

11

(1992) (dicta that "theft by conversion was merged into [a] theft by taking conviction at sentencing"); *Johnson v. State*, 130 Ga. App. 134, 137-138 (3) (202 SE2d 525) (1973) (physical precedent only) (specific crime of theft of motor vehicle merged into general crime of theft by taking). *Patterson*, supra, and similar cases do not mandate a different result, inasmuch as those cases address the sufficiency of the evidence relative to proof of theft by conversion or theft by deception following an indictment for theft by taking, rather than the potential merger of those charges. See, e.g., *Patterson*, 289 Ga. App. at 665-666 (1); *Bradford v. State*, 266 Ga. App. 198, 201-202 (2) (596 SE2d 715) (2004); *McMahon v. State*, 258 Ga. App. 512, 514-515 (1) (574 SE2d 548) (2002). Accordingly, we vacate Mathis' sentences for theft by taking and remand this case to the trial court for resentencing.[9]

---

[9] Because theft by conversion and theft by deception each require proof of an element or fact which the other does not, these convictions do not merge as a matter of fact or law. Compare OCGA §§ 16-8-3 with 16-8-4. See *Drinkard*, 281 Ga. at 213, 215; *Lavigne*, 299 Ga. App. at 714-715 (2). Moreover, as Mathis has not alleged that his convictions for theft by conversion (which requires lawful possession of "funds or other property of another"; see OCGA § 16-8-4 (a)) and theft by deception (which requires an unlawful taking "by any deceitful means or artful practice"; see OCGA § 16-8-3 (a)) represent a mutually exclusive verdict and since he did not object to the verdict form, that issue has been waived. See *Peoples v. State*, 295 Ga. App. 731, 734 (673 SE2d 82) (2009) ("since [the defendant] does not contend on appeal that the crimes at issue here are mutually exclusive, we do not reach the issue"); *Smith v. State*, 282 Ga. App. 339, 341 (1) (638 SE2d 791) (2006) ("A defendant waives any argument that the verdict contains mutually exclusive findings or is otherwise

*Judgment affirmed in part, vacated in part, and case remanded for resentencing. Dillard, C. J., and Ray, P. J., concur.*

---

inconsistent, confusing, or irregular if he fails to object to the form of the verdict.").

13