**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 24, 2023**

# In the Court of Appeals of Georgia

A23A0836. HANSFORD v. VEAL et al.

HODGES, Judge.

Mark Hansford sued George Randall Veal and Billy Daniels, Sr. (collectively, the "defendants"),[1] asserting claims for breach of contract, fraud, a civil Georgia Racketeer Influenced & Corrupt Organizations ("RICO") violation, costs and attorney fees pursuant to OCGA § 13-6-11, and punitive damages. Prior to trial, the parties filed a number of motions in limine, and Hansford appeals from the trial court's rulings on some of these motions.[2] Specifically, Hansford asserts that the trial court

---

[1] Kimberly Veal and "John Doe" were also named in the suit, but subsequently dismissed.

[2] Hansford initially filed an application for interlocutory appeal of these court orders, and we granted his application. *Hansford v. Veal*, Case No. A23I0089 (decided Dec. 7, 2022).

erred in: (1) permitting Veal, following his default, to dispute liability as to a number of claims; (2) concluding that the jury may apportion unliquidated damages under OCGA § 51-12-33 (b); and (3) allowing Veal to introduce evidence that he was not prosecuted or convicted of any crimes associated with his actions. For the reasons that follow, we reverse the trial court's rulings.

"We review the trial court's grant or denial of a motion in limine for abuse of discretion." (Citation and punctuation omitted.) *Barefoot v. Denson*, 364 Ga. App. 64, 67 (4) (873 SE2d 733) (2022). However, "[q]uestions of pleading construction and interpretation present issues of law" that we review de novo. *McCombs v. Southern Regional Med. Center*, 233 Ga. App. 676, 681 (2) (504 SE2d 747) (1998).

So viewed, the record shows that Hansford filed his complaint in 2018,[3] alleging that he contracted with the defendants to loan them money, and they were to repay Hansford $20,000 by July 31, 2016. The defendants borrowed the money "on the pretense that [Daniels] was in the middle of a water deal in Texas and needed the

---

[3] The suit was a renewal action that Hansford filed in the State Court of Fulton County. In May 2018, the case was transferred with the consent of all parties to the Superior Court of Pike County.

money to finalize the deal[.]"[4] Veal assured Hansford that if the water deal failed, he would repay Hansford with money he had in a trust account. The defendants, however, failed to pay Hansford the amount promised. According to the complaint, Hansford learned through a criminal investigation that the defendants had "defrauded numerous other persons in Georgia through a pattern and scheme of taking money from these unsuspecting people for use in a 'water deal' in Texas when no deal existed." Hansford alleged in his complaint that there was no Texas water deal and the defendants had no intention of paying back any of the money they were loaned. The complaint asserted claims for: (i) breach of contract based on the defendants' failure to pay the $20,000 owed by July 31, 2016, plus an annual interest rate of seven percent; (ii) expenses of litigation and attorney fees based on the defendants' bad faith and stubborn litigiousness under OCGA § 13-6-11; (iii) fraud and punitive damages based on the defendants' "willful and fraudulent misrepresentations and concealments" when, in fact, no Texas water deal existed and they had no intention of paying back any money; and (iv) a civil RICO violation and treble damages for racketeering activity under OCGA §§ 16-14-3 and 16-14-4 with theft by deception,

---

[4] Both the parties and the trial court refer to this business deal as the "Texas water deal."

OCGA § 16-8-3, as the predicate act based on the defendants' conspiracy to defraud Hansford with no intention of repaying his loan.

In April 2021, after Veal committed numerous discovery violations and was twice held in contempt, the trial court granted Hansford's third motion to strike Veal's pleadings, including his answer and counterclaims. Several months later, the trial court granted in part and denied in part Hansford's motion for a default judgment against Veal. The court found that Hansford is entitled to a judgment and verdict against Veal "as if every item and paragraph of the complaint were supported by proper evidence." Based on the factual allegations in the complaint, the court concluded that Hansford is entitled to a default judgment against Veal on his breach of contract claim for $20,000 plus seven percent annual interest calculated from July 31, 2016. However, the court found that Hansford "is not entitled to a default judgment as to his unliquidated damages . . . which includes [his] claim for reasonable expenses of litigation and attorney's fees, punitive damages, and RICO damages under OCGA §§ 16-14-4 and 16-14-6[,]" and that Veal is entitled to a jury trial on these issues. In essence, the trial court limited the trial to Hansford's unliquidated damages. The order did not mention Hansford's fraud or civil RICO claims against Veal.

4

In this same order, the trial court further found that given Daniels's failure to respond to Hansford's requests for admissions, Hansford was entitled to summary judgment against Daniels on Hansford's claims for breach of contract, fraud, and a civil RICO violation. The court, however, declined to grant Hansford summary judgment on his claims against Daniels for bad faith attorney fees and punitive damages, finding genuine issues of material fact precluded summary judgment on those issues.[5]

Prior to trial, Hansford filed two motions in limine which sought, inter alia, to prevent the defendants from presenting any evidence disputing their liability on Hansford's claims against them and introducing evidence showing that criminal RICO charges were pursued against Daniels, and not Veal. Veal subsequently filed a motion seeking to trifurcate the trial, so that the jury would: (i) decide whether he is liable for fraud, a civil RICO violation, and attorney fees and then determine the amount of unliquidated damages and apportionment of fault for those damages; (ii) decide whether punitive damages are warranted; and (iii) decide the amount and apportionment of any punitive damages. Veal also filed a motion in limine seeking

---

[5] The trial court subsequently struck Daniels's answer as a sanction for misconduct and granted Hansford's motion for default judgment against Daniels.

a ruling as to Hansford's burden of proof, specifically arguing that the factual allegations in Hansford's complaint do not support default judgment for fraud or civil RICO claims, and that he should be able to contest liability on those issues.

Following a hearing, the trial court entered a series of orders on the motions, concluding, in relevant part, as follows: (1) Veal is entitled to dispute his liability (a) on Hansford's claim for fraud because the complaint does not allege justifiable reliance, (b) for a civil RICO violation because the complaint fails to make specific allegations against each defendant, and (c) regarding the appropriateness of punitive damages; (2) all unliquidated damages are subject to apportionment under OCGA § 51-12-33 (b); and (3) Veal could introduce evidence showing that authorities elected not to prosecute him for a criminal RICO violation. Hansford appeals these rulings.

1. Hansford first asserts that the trial court erred in ruling that, despite Veal's default, Veal could dispute his liability for fraud, a civil RICO violation, and punitive damages. We will address each claim in turn after discussing the general law regarding default.

OCGA § 9-11-55 (a) provides, in relevant part, that when a case is in default, the plaintiff is entitled to judgment "as if every item and paragraph of the complaint or other original pleading were supported by proper evidence," unless the action

involves unliquidated damages, "in which event the plaintiff shall be required to introduce evidence and establish the amount of damages[.]" In other words, a default "operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration." (Citation and punctuation omitted.) *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 497 (740 SE2d 413) (2013). A defendant in default has admitted each and every material allegation in a plaintiff's complaint except the amount of damages, and the defendant is estopped from offering any defenses that would defeat the right of recovery. *Cohran v. Carlin*, 254 Ga. 580, 585 (3) (331 SE2d 523) (1985); accord *Willis*, 321 Ga. App. at 498.

That being said, conclusions of law, facts not well-pled, and forced inferences generally are not admitted by a default judgment. *Willis*, 321 Ga. App. at 497; accord *Fink v. Dodd*, 286 Ga. App. 363, 365 (1) (649 SE2d 359) (2007). Simply stated,

> while a default operates as an admission of the well-pled factual allegations in a complaint, it does not admit the legal conclusions contained therein. A default simply does not require blind acceptance of a plaintiff's erroneous conclusions of law. Nor does a default preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover.

7

(Citation and punctuation omitted.) *Fink*, 286 Ga. App. at 365 (1); accord *Willis*, 321 Ga. App. at 498. In considering the sufficiency of factual allegations in a complaint to which the defendant has defaulted, "we resolve all doubts in favor of [the] plaintiff[.]" *Zhong v. PNC Bank*, 345 Ga. App. 135, 140 (2) (b) (812 SE2d 514) (2018). In this case, the defendants answers were stricken as a result of discovery violations, so it must be kept in mind that this general rule does not apply. "[A] party who has had a default judgment entered against it as a discovery sanction has forfeited the right to argue that the complaint against that party is inadequately pled." *Nanoventions, LLC v. Daniels*, __ Ga. App. __, __ (1), (__ SE2d __), Case No. A23A0295, 2023 Ga. App. LEXIS 367, *5 (1) (2023) (physical precedent only); *Jones v. Zezzo*, 162 Ga. App. 281, 283 (290 SE2d 312) (1982) ("By his wilful contempt of the orders of discovery of two judges, appellant has as a sanction suffered a default judgment and thereby forfeited any claim that the cross complaint fails to state a cause of action.").

Notwithstanding the fact that the defendants have forfeited any claim that the complaint fails to state a cause of action because their answers were stricken and default judgment was entered against them as a result of discovery violations, see *Nanoventions,* Case No. A23A0295, 2023 Ga. App. LEXIS 367 *5 (1); *Jones*, 162

8

Ga. App. at 283, we nonetheless have undertaken a thorough review of the complaint's allegations regarding each of the claims at issue in this appeal "to determine what causes of action the well-pled facts will support." (Citation and punctuation omitted.) *Paris v. E. Michael Ruberti, LLC*, 355 Ga. App. 748, 753 (845 SE2d 720) (2020); accord *ServiceMaster Co. v. Martin*, 252 Ga. App. 751, 753 (1) (556 SE2d 517) (2001) ("We . . . [must] look . . . to those facts which are deemed admitted in order to determine what cause or causes of action those facts are legally sufficient to support.").

(a) *Fraud*. Hansford asserts that the trial court erred in concluding that, despite Veal's default admissions, Veal could refute Hansford's right to recovery for fraud.[6] We agree.

At the outset, we again note that Veal's answer was stricken as a sanction for his discovery violations, and, therefore, he has forfeited any claim that the complaint fails to state a cause of action for fraud. See *Nanoventions,* 2023 Ga. App. LEXIS 367, *5 (1); *Jones*, 162 Ga. App. at 283. That being said, we also conclude following

---

[6] The court granted Hansford's motion for summary judgment on his claims for fraud and a civil RICO violation against Daniels based on Daniels's default and failure to respond to requests for admissions. Accordingly, this argument pertains solely to defendant Veal.

9

a review of the complaint and applicable law that the well-pled allegations in Hansford's complaint state a cause of action for fraud.

"[T]o prevail on a fraud claim, including the tort of fraudulent inducement, the plaintiff must establish five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citation and punctuation omitted.) *Overlook Gardens Properties v. Orix, USA*, 366 Ga. App. 820, 828 (1) (b) (884 SE2d 433) (2023). In short, "[t]he elements of a fraud action are an intentional false representation by the defendant designed to induce the plaintiff to act or refrain from acting, upon which the plaintiff justifiably relies, resulting in damage to the plaintiff." *State Farm Mut. Auto. Ins. Co. v. Health Horizons*, 264 Ga. App. 443, 447 (2) (590 SE2d 798) (2003).

Hansford's complaint alleges that the defendants borrowed money from him "on the pretense" that Daniels "was in the middle of a water deal in Texas and needed the money to finalize the deal, when, in fact, there was no business deal." Furthermore, Hansford asserts that the defendants received this money by falsely representing they were involved in this non-existent business deal; in fact, Veal "convinced" Hansford to loan him money and "guaranteed" that he would repay

10

Hansford with money held in a trust account if the water deal failed, but the defendants "had no intentions" of paying back Hansford the money they owed him, and their "willful and fraudulent misrepresentations and concealments" were made with a specific intent to harm Hansford. The complaint further alleges that the defendants "defrauded numerous other persons in Georgia through a pattern and scheme of taking money from these unsuspecting people for use in a 'water deal' in Texas when no deal existed."

The trial court concluded that the factual allegations in Hansford's complaint fail to establish his fraud claim because the pleadings only infer, and do not specifically aver, "that he justifiably relied upon the Defendants['] misrepresentations." The court found that other elements of the fraud claim were properly pled.[7] As stated previously, "a judgment by default properly entered against parties sui juris operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration." (Citation and punctuation omitted.) *COMCAST Corp. v. Warren*, 286 Ga. App. 835, 840 (2) (650 SE2d 307) (2007).

---

[7] The trial court did not reach the fifth fraud element — damage to the plaintiff — but the defendants do not argue that Hansford failed to properly plead this element.

11

Additionally, in considering the factual allegations in Hansford's complaint we must resolve all doubts in his favor. *Zhong*, 345 Ga. App. at 140 (2) (b) (finding that allegations in a complaint that a property owner suffered damages as a result of the bank's foreclosure, "together with the fair inferences and conclusions of fact to be drawn from those allegations," supported the conclusion that the bank's conduct was the proximate cause of the property owner's injuries) (citation and punctuation omitted).

Here, the facts as alleged in the complaint, together with the fair inferences and conclusions of fact to be drawn from those allegations — specifically the use of the words "convinced" and "guaranteed" — support a conclusion that Hansford justifiably relied on the defendants' misrepresentations when he loaned them money for their non-existent business deal. See *Hope Elec. Enterprises v. Proforce Staffing*, 268 Ga. App. 302, 303-304 (2) (601 SE2d 723) (2004) (holding that trial court properly concluded that defendant admitted by default to liability with respect to the payment of a recruitment fee under a contract because the complaint "raise[d] the inference" that the recruitment fee was included in the alleged debt even though it was not specifically mentioned in the complaint). According to the complaint, Veal convinced Hansford to loan him the money by guaranteeing Hansford that he would

12

repay Hansford with money from a trust account if the water deal failed. Although the better practice would have been for Hansford to specifically allege in the complaint justifiable reliance on the defendants' misrepresentations and concealments, we find that the pleading sufficiently pleads justifiable reliance based on the factual allegations that Hansford was convinced to loan money to the defendants for investment in the non-existent business and he was guaranteed that repayment would be made from a trust account if the water deal failed. Cf. *Adams v. State*, 249 Ga. App. 730, 732 (549 SE2d 539) (2001) (affirming theft by deception conviction where defendant created a false impression that "induce[d] [victim] to part with her money").

In addition, while the trial court properly noted that "actionable fraud does not result from a mere failure to perform promises made[,]" see *J. Kinson Cook of Ga. v. Heery/Mitchell*, 284 Ga. App. 552, 558-559 (d) (644 SE2d 440) (2007), it is well settled in Georgia that "[a] promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud." (Citation and punctuation omitted.) *Bowdish v. Johns Creek Assoc.*, 200 Ga. App. 93, 95 (4) (406 SE2d 502) (1991); accord *Heery/Mitchell*, 284 Ga. App. at 559 (d); *Health Horizons*, 264 Ga. App. at 447 (2) (affirming the grant of default

13

judgment on a fraud claim where the plaintiff asserted that it relied on the defendant's promise to pay, when the defendant never intended to pay and in fact did not pay, to the plaintiff's detriment). Here, the defaulting defendants admitted that they "had no intentions of paying back [Hansford] the money owed" or "any of the money ill gotten from [their] unsuspecting victims." Accordingly, resolving all doubts in favor of Hansford, see *Zhong*, 345 Ga. App. at 140 (2) (b), the definite and certain factual allegations in Hansford's complaint, along with the fair inferences and conclusions of fact to be drawn from the allegations, see *Willis*, 321 Ga. App. at 497, are sufficient to state a claim for fraud, see *Health Horizons*, 264 Ga. App. at 447 (2). The trial court's conclusion that "Veal is not estopped from presenting defenses [at trial] that no [fraud] claim existed" must be reversed.

(b) *RICO violation*. Hansford argues that the trial court erred in permitting Veal, despite his default admissions, to refute his liability for a civil RICO violation.[8] Hansford is correct.

---

[8] We note again that the trial court granted Hansford's motion for summary judgment on his claims for fraud and a civil RICO violation against Daniels based on Daniels's default and failure to respond to requests for admissions. Accordingly, this argument also pertains solely to defendant Veal.

14

We again note at the outset that Veal's answer was stricken as a sanction for his discovery violations, and, therefore, he has forfeited any claim that the complaint fails to state a cause of action for a civil RICO violation. See *Nanoventions,* 2023 Ga. App. LEXIS 367, *5 (1); *Jones*, 162 Ga. App. at 283. That being said, we also conclude following a review of the complaint and applicable law that the well-pled allegations in Hansford's complaint state a cause of action for a civil RICO violation.

"The Georgia RICO Act was enacted by the Georgia legislature to impose criminal penalties against those engaged in an interrelated pattern of criminal activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury, and civil remedies to compensate those injured by reason of such acts." (Citations and punctuation omitted.) *Najarian Capital v. Clark*, 357 Ga. App. 685, 693 (4) (849 SE2d 262) (2020). Under the RICO Act, "[i]t shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." OCGA § 16-14-4 (a). Georgia defines a "pattern of racketeering activity" in relevant part as "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices,

15

victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents[.]" OCGA § 16-14-3 (4) (A). In turn, "'[r]acketeering activity' means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment under the laws of this state[.]" OCGA § 16-14-3 (5) (A). Here, Hansford identified theft by deception under OCGA § 16-8-3 (a) — "obtain[ing] property by any deceitful means or artful practice with the intention of depriving the owner of the property" — as the predicate act, and such an act, if shown, can constitute a predicate act under the Georgia RICO statute. See OCGA § 16-14-3 (5) (A) (xii).

"To establish a valid civil RICO claim, a plaintiff must show that the defendant violated or conspired to violate Georgia's RICO Act and that the RICO violation proximately caused injury to the plaintiff." (Citation and punctuation omitted.) *Overlook Gardens Properties*, 366 Ga. App. at 834 (1) (c); accord *Benevolent Lodge No. 3 v. Davis*, 365 Ga. App. 564, 568 (1) (878 SE2d 760) (2022); *Five Star Athlete Mgmt. v. Davis*, 355 Ga. App. 774, 778 (2) (845 SE2d 754) (2020). Satisfying the proximate cause element of the RICO Act requires a plaintiff to show that his injury "flowed directly from at least one of the predicate acts. This burden is not met where

16

a plaintiff shows merely that his injury was an eventual consequence of the predicate act or that he would not have been injured but for the predicate act." (Citation and punctuation omitted.) *Najarian Capital*, 357 Ga. App. at 694 (4); accord *Cox v. Mayan Lagoon Estates Ltd.*, 319 Ga. App. 101, 109 (2) (b) (734 SE2d 883) (2012).

Applying the foregoing, Veal's default estops him from denying that he committed theft by deception. As stated above, theft by deception occurs when a person "obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." OCGA § 16-8-3 (a). "[O]ne who obtains funds by making promises of the performance of services which he does not intend to perform or knows will not be performed may be guilty of theft by deception under OCGA § 16-8-3 (b) (5)." (Citation and punctuation omitted.) *Patterson v. State*, 289 Ga. App. 663, 667 (1) (d) (658 SE2d 210) (2008), abrogated in part on other grounds, *Stephens v. State*, 289 Ga. 758, 759 (1) (a) (716 SE2d 154) (2011). The admitted factual allegations in the complaint, coupled with the fair inferences and conclusions of fact to be drawn from the factual allegations, *Willis*, 321 Ga. App. at 497, demonstrate that the defendants conspired to borrow money from Hansford, with no intention of paying him back, by misrepresenting and deceiving Hansford into believing Daniels was in the middle of a water deal in Texas and needed the money

17

to finalize the deal, when in fact no such business deal existed. Although Veal asserts that the promissory note and admissions from Daniels indicate that Veal had no responsibility for repayment of the loan,[9] this evidence is irrelevant in the face of Veal's admissions as a result of his default, including the admission that Veal "guaranteed" that he would repay Hansford with money held in a trust account if the water deal failed. Because Veal defaulted, he admitted the factual allegations in the complaint supporting a theft by deception predicate act.

Likewise, Veal's default estops him from denying liability under the Georgia civil RICO statute. Veal admitted through his default that he conspired with Daniels to commit theft by deception; that the defendants perpetuated the same pattern, scheme, and fraud against six to twelve other persons; and that Hansford's injury — the loss of his money — proximately resulted from the theft by deception.

---

[9] Veal does not cite to the record in his appellate brief to support his assertion regarding Daniels's admissions. The record, however, shows that Daniels admitted to the following facts: (i) Veal asked to borrow money from Hansford for a business deal involving Daniels, assuring Hansford that he would repay the money from a trust account if it was not repaid by July 31, 2016; (ii) Daniels conspired with Veal to defraud Hansford to obtain money for a business deal that did not exist; (iii) the defendants had no intention of repaying Hansford's loan; (iv) the defendants defrauded six to twelve other persons regarding the Texas water deal; and (v) the defendants received money from Hansford by falsely representing that they were involved in a business deal. These admissions do not appear to support a claim that Veal had no responsibility for paying back the loan.

18

Accordingly, Hansford's complaint establishes a valid Georgia civil RICO claim. See OCGA § 16-14-3 (5) (A) (xii); see also *Overlook Gardens Properties*, 366 Ga. App. at 834 (1) (c); *Najarian Capital*, 357 Ga. App. at 694 (4).

In ruling against Hansford, the trial court found that his complaint allegations do not meet the requirements of demonstrating a Georgia civil RICO violation because Hansford does not plead elements detailed in a Northern District of Georgia federal decision. See *Pombert v. Glock, Inc.*, 171 FSupp.3d 1321 (N.D. Ga. 2016). In its order, the trial court cited the following from the federal *Pombert* decision:

> RICO claims are essentially a certain breed of fraud claims, and must be pled with an increased level of specificity. Thus, a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud.

(Citation and punctuation omitted.) 171 FSupp.3d at 1335 (III) (B). The trial court further noted that *Pombert* provides that "a plaintiff may not lump together the defendants; a plaintiff must make specific allegations against each defendant." (Citation and punctuation omitted.) Id.

19

"Because the Georgia RICO Act was modeled after the federal statute, this Court has found federal authority persuasive in interpreting the Georgia RICO statute[.]" *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 430 (614 SE2d 758) (2005). However, "the Georgia RICO statute is considerably broader than the federal RICO statute and . . . federal circuit court opinions regarding the federal statute, while instructive, do not control our construction or application of the Georgia RICO statute." *Blalock v. Anneewakee, Inc.*, 206 Ga. App. 676, 677-678 (1) (426 SE2d 165) (1992), overruled in part on other grounds as recognized in *Southern Intermodal Logistics v. D. J. Powers Co.*, 251 Ga. App. 865, 868 (1), n. 1 (555 SE2d 478) (2001). The *Pombert* case relied upon by the trial court does not cite a single Georgia case requiring the elements detailed by the trial court. *Pombert*, 171 FSupp.3d at 1335 (III) (B). And the main case cited in *Pombert* for the pleading requirements relied on federal pleading requirements because the plaintiff asserted a *federal* civil RICO claim. Id.; see *Ambrosia Coal & Constr. Co. v. Morales*, 482 F3d 1309, 1316-1317 (II) (a) (iii) (11th Cir. 2007).

In addition, the defendants' brief does not mention a single Georgia case either citing *Pombert* or requiring the elements addressed by the federal court and cited by the trial court. In fact, this Court has specifically held that the federal pleading

20

requirements are only necessary when a plaintiff alleges mail and wire fraud.[10] See

*Bazemore v. U. S. Bank Nat. Assn.*, 363 Ga. App. 723, 728 (c), n. 6 (872 SE2d 491)

(2022) ("[A]llegations of mail and wire fraud in a civil RICO action must not only be

pled in accordance with the heightened pleading standard of OCGA § 9-11-9 (b), but

also are required to include such matters as the time, place, and content of the alleged

misrepresentations, as well as who made the alleged misrepresentations and to

whom.") (citation and punctuation omitted); accord *Z-Space, Inc. v. Dantanna's CNN

Center*, 349 Ga. App. 248, 254 (2) (c) (825 SE2d 628) (2019).

We therefore decline to adopt the heightened pleadings standard relied on in

*Pombert* when a predicate offense such as theft by deception is alleged and instead

reiterate and apply the well settled standard for establishing a civil RICO claim in

Georgia: "To establish a valid civil RICO claim, a plaintiff must show that the

defendant violated or conspired to violate Georgia's RICO Act and that the RICO

violation proximately caused injury to the plaintiff[.]" (Citation and punctuation

---

[10] This rule likely results from the fact that OCGA § 16-14-3 (5) (A) does not include mail or wire fraud in the definition of "racketeering activity." Instead, both are captured because Section (5) (C) extends the definition to mean "any conduct defined as 'racketeering activity' under 18 U.S.C. Section 1961 (1), any violation of 18 U.S.C. Section 1028, or any violation of 31 U.S.C. Sections 5311 through 5330[,]" and 18 USC § 1961 (1) includes mail fraud (18 USC § 1341) and wire fraud (18 USCA § 1343) in its definitions of "racketeering activity."

omitted.) *Overlook Gardens Properties*, 366 Ga. App. at 834 (1) (c); accord *Benevolent Lodge No. 3*, 365 Ga. App. at 568 (1); *Five Star Athlete Mgmt.*, 355 Ga. App. at 778 (2).

In short, the trial court erroneously used inapplicable federal law to support its ruling that Hansford's complaint allegations do not establish a violation of the Georgia civil RICO statute. This ruling must be reversed. Resolving all doubts in favor of Hansford, see *Zhong*, 345 Ga. App. at 140 (2) (b), the definite and certain factual allegations in Hansford's complaint, along with the fair inferences and conclusions of fact to be drawn from the allegations, see *Willis*, 321 Ga. App. at 497, are sufficient to state a claim for a civil RICO violation and estop Veal from denying liability under the Georgia civil RICO statute.

(c) *Punitive damages*. Hansford asserts that the trial court erred in concluding that Veal could present defenses and evidence as to liability on Hansford's punitive damages claim. We agree.

In its order granting in part Hansford's motion for default judgment against Veal, the court ruled that Hansford is not entitled to a default judgment "as to his unliquidated damages under O.C.G.A. § 9-11-55 (a), which includes Plaintiff's claim for reasonable expenses of litigation and attorney's fees, punitive damages, and RICO

22

damages under OCGA §§ 16-14-4 and 16-14-6." It reiterated that ruling in its order on Veal's motion to trifurcate, finding that since Veal could present defenses defeating Hansford's right of recovery for the fraud and RICO claims due to Hansford's failure to properly plead the factual allegations of those claims, Veal could present evidence regarding the appropriateness of compensatory and punitive damages.

It is well settled that punitive damages are authorized in tort actions "in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). "[T]he determination of *liability* for punitive damages and the *amount* of punitive damages are two separate issues." (Citation and punctuation omitted; emphasis in original.) *Cotto Law Group v. Benevidez*, 362 Ga. App. 850, 858 (2) (a) (870 SE2d 472) (2022). Accordingly, where a plaintiff's complaint alleges that a defaulting defendant's conduct rose to a level that would warrant an award of punitive damages, that defendant is precluded from contesting his liability for such damages. See *COMCAST Corp.*, 286 Ga. App. at 838-842 (1) (concluding that a trial court did not err in granting plaintiff a default judgment as to punitive damages where

complaint alleged that defendant had acted "recklessly, wantonly, and with conscious disregard for the consequences"); *Wise Moving & Storage v. Rieser-Roth*, 259 Ga. App. 832, 833-834 (2) (578 SE2d 535) (2003) (holding that the complaint allegations authorized the entry of default judgment against a defendant on his liability for punitive damages); cf. *Benevidez*, 362 Ga. App. at 859 (2) (a) (affirming zero-dollar punitive damages award where complaint allegations, deemed admitted by default, did not specifically aver that the defendant's conduct was willful, malicious, fraudulent, wanton, oppressive, or consciously indifferent to the consequences, as would be required to justify an award under OCGA § 51-12-5.1 (b)). With these principles in mind, we must review Hansford's complaint, resolving all doubts in his favor, see *Zhong*, 345 Ga. App. at 140 (2) (b), to determine whether the definite and certain factual allegations in his complaint, along with the fair inferences and conclusions of fact to be drawn from the allegations, see *Willis*, 321 Ga. App. at 497, are sufficient to state a claim for punitive damages without further proof.

Hansford's complaint alleges that Veal and Daniels deliberately made misrepresentations and concealed relevant facts for the purpose of obtaining money from Hansford; they did so knowing they were never going to pay Hansford back; they used the same pattern, scheme, and fraud as they used on others to borrow the

24

money from Hansford; they acted with specific intent to harm Hansford; and their conduct was malicious, fraudulent, and oppressive. The complaint further prays for punitive damages under OCGA § 51-12-5.1 "in an amount to be determined to deter Defendants from such wrongful and fraudulent conduct in the future." These factual allegations, which stand admitted by the defendants' defaults, are sufficient to support liability for punitive damages, leaving only the amount, if any, of damages to be determined by the trier of fact. See *COMCAST Corp.*, 286 Ga. App. at 838-842 (2). The trial court's ruling that Veal could present evidence disputing his liability for punitive damages is incorrect for a number of reasons.

First, the trial court relied on its rulings that Hansford's complaint does not properly allege claims for fraud and a civil RICO violation — rulings that we found erroneous in Divisions (1) (a) and (b). Second, pretermitting whether Veal has forfeited any claim that the complaint fails to properly allege an entitlement to punitive damages following the striking of his answer and the entry of default judgment as a sanction for his discovery violations, see *Nanoventions,* 2023 Ga. App. LEXIS 367, *5 (1); *Jones*, 162 Ga. App. at 283, we conclude that Hansford's complaint sets out factual allegations sufficient to support liability for punitive damages, and Veal's default therefore precludes him from contesting liability for such

25

damages. See *COMCAST Corp.*, 286 Ga. App. at 838-842 (2). Simply put, even if Veal was entitled to contest his liability on Hansford's claims for fraud and/or a civil RICO violation — which we specifically found in Division 1 (a) and (b) that he is not — Veal could not contest whether his conduct warranted an award of punitive damages if he prevailed on the underlying claims because he has admitted by default that the conduct on which those claims are based was deliberate, malicious, fraudulent, and oppressive. See *Hill v. Johnson*, 210 Ga. App. 824, 825 (437 SE2d 801) (1993) (concluding that complaint allegations that defendants' actions warranted the award of punitive damages, coupled with default judgment on liability, satisfied the requirement in OCGA § 51-12-5.1 (d) that a trier of fact first resolve from the evidence produced at trial whether an award of punitive damages shall be made). The only issue left to be tried regarding Hansford's punitive damages claim is the amount, if any, that should be awarded. Accordingly, the trial court's ruling that Veal could dispute his liability for punitive damages must be reversed.

2. Hansford argues that the trial court erred in concluding that any damages he might recover for fraud and/or a civil RICO violation would be subject to apportionment pursuant to OCGA § 51-12-33. Hansford is correct.

26

OCGA § 51-12-33 (b) states that where an action is brought against one or more persons, the trier of fact "shall . . . apportion its award of damages among the person or persons who are liable according to the percentage of fault of each person."[11] Such damages apportioned "shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution." Id. However, in *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558, 569-575 (2) (826 SE2d 116) (2019), the Supreme Court of Georgia held that the apportionment statute does not apply to claims involving conspiracy — i.e., where tortfeasors have acted in concert. The Supreme Court recognized the well settled principle that "where concert of action appears, a joint tortfeasor relation is presented and all joint tortfeasors are jointly and severally liable for the full amount of plaintiff's damage." (Citation and punctuation omitted.) Id. at 570 (2). According to the Supreme Court, concerted action, also known as civil conspiracy, invokes the common law doctrine of imputed fault based on a legal theory of mutual agency, and, because such fault is not divisible as a matter of law, the fault cannot be apportioned. Id. at 560, 572-574 (2); see also *Metro*

_____

[11] This Code section was amended in 2022 with changes that do not affect our ruling. OCGA § 51-12-33 (b) (2022). The 2022 amendment, applicable to all cases filed after May 13, 2022, substituted "one or more persons" for "more than one person" in subsection (b). See Ga. L. 2022, p. 802, § 2/HB 961.

*Atlanta Task Force for the Homeless v. Ichthus Community Trust*, 298 Ga. 221, 225-226 (2) (a) (780 SE2d 311) (2015) ("The essential element of a civil conspiracy is a common design[,]" and "the fact of conspiracy, if proved, makes any actionable deed by one of the conspirators chargeable to all[;]" accordingly, if a conspiracy exists, a conspiring defendant "could be held jointly liable for any torts committed by the other defendants to effect the common design of the conspiracy, even if he did not directly engage in each and every tort alleged.") (citations and punctuation omitted). This ruling was reinforced by the Supreme Court in *Alston & Bird v. Hatcher Mgmt. Holdings*, 312 Ga. 350, 361 (3), n. 7 (862 SE2d 295) (2021), superseded by statute for cases filed after May 13, 2022: "We held in *Loudermilk* that the fault resulting from concerted action is legally indivisible and thus cannot be apportioned[.]"[12]

After considering the *Loudermilk* decision, the trial court stated that because it has been established in this case that Daniels and Veal were involved in a conspiracy, "it would appear that the Court should find that apportionment would not be applicable in this matter[.]"[13] However, the trial court ultimately concluded that,

---

[12] Notably, the General Assembly did not overrule *Metro Atlanta* or *Loudermilk* when it rewrote OCGA § 51-12-33 (b) and superseded *Alston & Bird* in 2022.

[13] Although Veal argues that the trial court found Hansford's pleadings inadequate to establish certain causes of action, decisions which we have addressed

28

based on this Court's decision in *I. A. Group, Ltd. Co. v. RMNANDCO*, 336 Ga. App. 461, 463 (1) (784 SE2d 823) (2016), apportionment was mandated because the facts in that case "more closely parallel the facts in this case[.]" We disagree.

In *I. A. Group*, which involved a trial solely on the issue of unliquidated and punitive damages following the entry of default, this Court found that a trial court erred in instructing the jury on joint and several liability because

> [w]hile it is correct that a default concludes the defendant's liability and estops him from offering any defenses which would defeat the right of recovery, and that any argument that goes to liability for the damages and not the amount of damages awarded is not permitted, assessment of fault for purposes of apportioning damages between the defendants in the instant context does not violate that rule.

336 Ga. App. at 463-464 (1). *I. A. Group*, however, though fleetingly mentioning that the plaintiff alleged a civil RICO violation, never once mentions the words "conspire" or "conspiracy." In fact, the decision specifically notes that it was not addressing whether damages may be apportioned under RICO, see id. at 464 (3), n. 6, and, in any

in Division 1, the trial court clearly found that the complaint properly alleges, and therefore the defendants admitted through default, that Daniels and Veal were involved in a conspiracy. Veal has not asserted error with regard to this finding.

29

event, the RICO statute does not mandate that parties "conspire" to be engaged in "racketeering activity," see OCGA § 16-14-3 (5) (A).

In addition, the Supreme Court of Georgia in *Loudermilk*, which specifically decided whether "Georgia's common-law rule imposing joint and several liability on tortfeasors who act in concert" survived the enactment of the apportionment statute, 305 Ga. at 569 (2), cited *I. A. Group* in a different division of its decision, stating that *I. A. Group* supported the definition of "property" adopted by the Court. *Loudermilk*, 305 Ga. at 567 (1). The Supreme Court noted that *I. A. Group* held "that [a] trial court committed plain error in instructing the jury on joint and several liability because the plain language of OCGA § 51-12-33 required apportionment of damages in a suit for breach of fiduciary duty and related business torts seeking damages for purely pecuniary losses[.]" *Loudermilk*, 305 Ga. at 567 (1). The Supreme Court did not mention *I. A. Group* in its discussion of the apportionment statute when concerted action or civil conspiracy exists. *Loudermilk*, 305 Ga. at 569-576 (2). We, therefore, do not find that *I. A. Group* "more closely parallel[s] the facts in this case," which involve admitted conspiracy.

Based on *Loudermilk*, the civil conspiracy admission in this case demands that any damages Hansford might recover on his fraud and/or civil RICO claims would

be joint and several; therefore, they would not be subject to apportionment under OCGA § 51-12-33 (b). See *Loudermilk*, 305 Ga. at 573-576 (2). The trial court's ruling in this regard is reversed.

3. Finally, Hansford asserts that the trial court erred in denying his motion in limine to exclude evidence or references "to whether any criminal charges were or were not pursued against any party." Specifically, Hansford sought to prohibit all parties from referring to the fact that criminal charges against Veal were not pursued or that they were only pursued against Daniels, thereby suggesting that Veal is not liable to Hansford for a civil RICO violation. We agree with Hansford that the trial court erred in denying his motion in limine.

Veal admitted by default that Hansford "learned through a criminal investigation that Defendants . . . have defrauded numerous other persons in Georgia through a pattern and scheme of taking money from these unsuspecting people for use in a 'water deal' in Texas when no deal existed." Veal also admitted by default the facts supporting the allegations that the defendants' conduct is "chargeable by indictment" under the theft by deception statute and constitutes racketeering activity as defined by statute. According to Veal, because the complaint references a criminal investigation and alleges that Veal engaged in criminal behavior (theft by deception),

31

Veal has a right to dispute those factual allegations, "including introducing evidence that he was never charged with a crime and/or that criminal charges were only pursued against other parties to this alleged transaction."[14]

The trial court concluded that Veal could introduce evidence at the trial that he was not prosecuted or convicted of criminal acts associated with the Texas water deal and that criminal charges were only pursued against Daniels. According to the court, "if reference to the outcome of the criminal investigation is excluded it could confuse the issues or mislead the jurors." In reaching this decision, the trial court reiterated its conclusion, which we found in Division 1 (b) to be erroneous, that Veal was entitled to dispute liability for any civil RICO violation despite his default. In addition, the trial court spent much of its order addressing OCGA § 16-14-6 (e) and our decision in *Cox*, supra. Those citations, however, are inapposite.

OCGA § 16-14-6 (e) mandates that "[a] conviction in any criminal [RICO] proceeding shall estop the defendant in any subsequent civil action or civil forfeiture proceeding under this chapter as to all matters proved in the criminal proceeding."

---

[14] It is undisputed that Veal was arrested for violation of the RICO Act. Veal maintains, however, without citing to any evidence in the record, that the charge was later dismissed by the district attorney and no further action has been maintained against him.

32

Relying on this statute, we held in *Cox* that the defendant was precluded from relitigating any facts clearly established and essential to his criminal RICO conviction in a civil suit based on the same underlying conduct. 319 Ga. App. at 108-110 (2) (b). Neither of these citations addresses the present situation where a defendant has *not* been convicted in a criminal proceeding prior to the commencement of a civil proceeding. And neither the trial court nor the parties have cited a single case addressing what evidence pertaining to criminal RICO charges should be admitted or excluded in a civil RICO action under the circumstances presented in this case.

In the absence of specific law addressing the circumstances here, we decline to find that the General Assembly meant for OCGA § 16-14-6 (e) to include the corollary provision that the lack of a conviction or prosecution can be used by a defendant to disprove liability for a civil RICO violation. Instead, we turn to well settled principles of evidence admission. In doing so, we note that, contrary to the trial court's finding, these general principles do not simply address situations involving automobile collisions. For example, in *Pierce v. Pierce*, 241 Ga. 96, 99-100 (3) (243 SE2d 46) (1978), the Supreme Court of Georgia affirmed a trial court's refusal to allow evidence that a criminal prosecution against the husband for child abuse had been dismissed, even though the jury heard testimony regarding several

33

instances of child abuse in the civil case involving divorce, alimony, including an incident that resulted in the issuance of a criminal warrant against the husband. The Supreme Court noted that "[t]he rule supported by the great weight of authority is to the effect that a judgment of conviction or acquittal rendered in a criminal prosecution cannot be given in evidence in a purely civil action, to establish the truth of the facts on which it was rendered." (Citation and punctuation omitted.) Id.; accord *Powell v. Wiley*, 125 Ga. 823 (54 SE 732) (1906) (holding that a defendant is not permitted to show his acquittal of assault and battery in a civil case for the same alleged offense); *Palmer v. Wilkins*, 163 Ga. App. 104, 108-109 (5) (294 SE2d 355) (1982) (affirming trial court's refusal to admit evidence that the grand jury had returned a "no bill" in an investigation of possible criminal actions by the defendant in regard to the sale of property involved in the civil case); *Smith v. Goodwin*, 103 Ga. App. 248, 249 (3) (119 SE2d 35) (1961) (noting that neither the plaintiff nor the defendant is permitted in a civil action for damages resulting from an automobile collision to show that the defendant was or was not adjudged guilty in traffic court of violations of law related to the collision). In fact, this Court specifically has held that "evidence as to whether a criminal case had or had not been made against a defendant . . . is irrelevant and immaterial" in a civil action addressing liability for the

34

same conduct. (Citation and punctuation omitted.) *Palmer*, 163 Ga. App. at 109 (5); accord *Smith*, 103 Ga. App. at 249 (3).[15]

Here, the fact that Veal admitted by default the inference that he was involved in a criminal investigation and admitted facts supporting Hansford's allegations that his conduct is chargeable by indictment under the theft by deception statute and constitutes racketeering activity as defined by statute do not remove this case from our well settled law. The clear and unambiguous language of OCGA § 16-14-6 (e) does not apply, and Hansford's complaint allegations do not run afoul of our long-standing principle that "[e]vidence that charges were or were not made against either of the parties involved in an incident and the results of any court action are

---

[15] That being said, a guilty plea to a criminal charge is admissible in a civil action because "[i]n Georgia, a guilty plea is an admission against interest and prima facie evidence of the facts admitted." (Citation and punctuation omitted.) *Trustgard Ins. Co. v. Herndon*, 338 Ga. App. 347, 351 (1) (790 SE2d 115) (2016) (physical precedent only); see also *Harden v. State Farm Fire & Cas. Co.*, 269 Ga. App. 732, 734 (1) (605 SE2d 37) (2004) (holding that evidence that an insured entered an *Alford* plea of guilty was sufficient to establish a prima facie case that an insurer had no duty under the policy to provide coverage or a defense). This includes an admission of guilt due to a failure not to appear in court; such an admission may be subsequently used in a civil action for damages as an admission against interest. See *Cannon v. Street*, 220 Ga. App. 212, 214 (2) (469 SE2d 343) (1996).

inadmissible in a civil action arising out of the incident."[16] *Nationwide Mut. Fire Ins. Co. v. Kim*, 294 Ga. App. 548, 552 (1) (669 SE2d 517) (2008).

Moreover, the trial court's finding that "if reference to the outcome of the criminal investigation is excluded it could confuse the issues or mislead the jurors" is inaccurate. In fact, the State's decision not to prosecute Veal proves nothing because "the applicable standard of proof in state civil RICO actions [is] a preponderance of the evidence[,]" *Stone*, 279 Ga. at 431, not a "beyond a reasonable doubt" standard necessary to support criminal RICO convictions, see *Lowery v. State*, 347 Ga. App. 26, 34 (2) (815 SE2d 625) (2018). Accordingly, evidence that Veal was not prosecuted or that Daniels was the only defendant prosecuted might, in fact, mislead a jury into believing that the State did not think the charges were supported by the evidence, leading the jury to exonerate Veal. The evidence sought to be excluded by Hansford is irrelevant and not probative. Therefore, the trial court erred in conducting any balancing test under *Webster v. Boyett*, 269 Ga. 191, 195 (1) (496 SE2d 459) (1998).

---

[16] Because the complaint at issue here does not indicate that charges were brought against Veal, we leave for another day the decision of what evidence may or may not be admissible to rebut such an allegation when a defendant defaults.

As we found in Division 1 (a) and (b), Veal admitted by default that he took money from Hansford and a number of people based on promises of repayment that he never intended to perform, using false statements about a water deal that did not exist to convince his victims they would be repaid. Veal also admitted that he guaranteed Hansford that he would repay him using a trust account if the water deal failed. These admitted facts support Veal's liability on Hansford's claims of fraud and a civil RICO violation, and he is estopped from arguing his liability on those claims. Accordingly, Veal may *not* attempt to introduce evidence to rebut his admission of liability, which is exactly what evidence of the State's decision to prosecute Daniels — and not Veal — would do. See *Cohran*, 254 Ga. at 585 (3); *Willis*, 321 Ga. App. at 502 (2). Although Veal asserts that he "has no intention to introduce evidence of the dismissal of the charges against him unless [Hansford] first creates an unfair inference of alleged criminal activity[,]" the very nature of a civil RICO claim, and Veal's admissions by default, involve direct and inferential evidence that Veal engaged in criminal activity. The trial court's ruling that Veal could introduce evidence that he was not prosecuted or convicted of criminal acts associated with the Texas water deal and that criminal charges were only pursued against Daniels must be reversed.

37

*Judgment reversed. Miller, P. J., concurs and Mercier, C. J., concurs in judgment only.*